757 P.2d 115

**KORD'S AMBULANCE SERVICE, INC.,**
**an Arizona corporation,**
**Petitioner/Appellant,**

**v.**

**CITY OF TUCSON, a municipal corporation; Arizona Department of Health Services, a division of the State of Arizona, Respondents/Appellees.**

**No. 2 CA–CV 88–0133.**

Court of Appeals of Arizona,
Division 2, Department B.

June 16, 1988.

Fay & Webb by Richard E. Fay and Paul G. Ulrich, P.C., Phoenix, for petitioner/appellant.

Frederick S. Dean, Tucson City Atty. by Loretta Humphrey, Tucson, for respondent/appellee City of Tucson.

Robert K. Corbin, Atty. Gen. by Shirley S. Simpson, Phoenix, for respondent/appellee Arizona Dept. of Health Services.

## OPINION

FERNANDEZ, Judge.

Appellant Kord's Ambulance Service, Inc., filed a special action petition in the trial court against appellees Arizona Department of Health Services (DHS) and the City of Tucson. The trial court granted DHS's motion to dismiss the action against it and denied Kord's request for relief against the City. Kord's contends both actions were erroneous. We affirm.

In 1980, Arizona voters approved a referendum deregulating motor carriers effective July 1, 1982. Included in that deregulation were ambulances and ambulance services. By a November 1982 referendum, the voters approved a constitutional amendment which authorized the legislature to "provide for the regulation of ambulances and ambulance services in this State in all matters relating to services provided, routes served, response times and charges." Ariz. Const.art. XXVII § 1.

Pursuant to that authority, the legislature amended portions of Chapter 21.1 of Title 36, A.R.S. Under the amended chapter, the DHS director is required to adopt standards and criteria for issuing licenses to operate ambulances or ambulance services in addition to the former duties of adopting standards and criteria pertaining to the quality of medical care and the certification of emergency medical technicians and ambulance attendants. A.R.S. § 36-2202. In accordance with the statutes, Kord's obtained a certificate of necessity to operate in the Tucson metropolitan area in July 1985, as did Rural Metro Corporation, which is not a party to these proceedings.

In 1974, the City of Tucson began training members of its fire department as paramedics. In 1977, the City converted its basic rescue vehicles into paramedic/rescue units. By 1983, the City had seven front-line paramedic vehicles, each staffed with two state-certified paramedics, as well as 17 engine companies and six ladder companies, each staffed by four fire fighters who are also certified emergency medical technicians. The vehicles are dispatched by the fire department through the 911 telephone system. Prior to December 1986, an ambulance from a licensed ambulance service was dispatched simultaneously with a paramedic unit in response to a call. On December 21, 1986, the City changed its procedures so that presently only a paramedic unit is initially dispatched to the scene. If, after stabilization, the patient requires immediate transportation, the paramedic vehicle transports the patient to a hospital. If the patient does not require immediate transportation and the paramedic unit is a City of Tucson vehicle, a private ambulance is dispatched to transport the patient.

Kord's immediately complained to DHS about the change in procedure, and on December 24, 1986, DHS issued a cease and desist order to the City, ordering it to cease operating an ambulance service without a certificate of necessity. When DHS took no further action to enforce the order, Kord's filed a petition for special action in May 1987. The petition sought a court order requiring DHS to enforce the cease and desist order against the City by filing suit. The petition was also brought against the City and sought an injunction prohibiting it from operating an ambulance service without having obtained a certificate of necessity.

DHS responded with a motion to dismiss for failure to state a claim upon which relief might be granted. After the trial court granted the motion to dismiss, it heard arguments on the special action petition against the City. The court denied the relief Kord's sought. Kord's appeals from both rulings.

## MOTION TO DISMISS

Kord's special action petition alleged that the director of DHS had failed to perform duties required by law in which he has no discretion, that is, not filing suit to enforce the cease and desist order. The petition alleged that the failure constituted an illegal delegation of authority to the City over the regulation of ambulances.

As DHS correctly pointed out in its motion to dismiss, Kord's did not allege any affirmative act by DHS in delegating authority to the City; it alleged that the delegation was the result of DHS's failure to act. Thus, Kord's failed to properly raise the issue of whether DHS had proceeded in excess of its jurisdiction or legal authority, the only arguably applicable issue of the three that may be raised in a special action. Rule 3, Ariz.Spec.Action R.Proc., 17A A.R.S.

■ In connection with Kord's allegation that DHS had failed to exercise discretion which it had a duty to exercise, DHS noted that the statute authorizing it to file suit, A.R.S. § 36–2244, merely grants it authority to sue; it does not require the filing of suit. Since DHS has discretion to determine whether or not to file suit, the duty involved is not ministerial, and mandamus is not available to compel the filing of suit. *Ackerman v. Houston,* 45 Ariz. 293, 43 P.2d 194 (1935); *Crouch v. City of Tucson,* 145 Ariz. 65, 699 P.2d 1296 (App.1984).

In neither of its appellate briefs has Kord's raised a single argument about its request for an order compelling DHS to file suit against the City. It conceded at oral argument that it had abandoned that issue on appeal. Instead, it argues that DHS failed to adopt regulations pertaining to first responder programs and the dispatch of emergency services providers, an issue it never raised below in response to the motion to dismiss. We find no merit to Kord's contention that the issue was raised because the special action petition alleged that DHS failed to implement, enforce or interpret the statutory provisions. We note that in granting the motion to dismiss, the trial court stated in its minute entry as follows:

With regard to the Arizona Department of Health Services' Motion to Dismiss, the Court understands that Kord's Ambulance seeks a mandamus from this Court ordering Health Services to file a law suit against the City of Tucson pursuant to A.R.S. ¶ [sic] 36–2244. With this clarification and understan[di]ng,

IT IS ORDERED GRANTING the Arizona Department of Health Services' Motion to Dismiss as to Arizona Department of Health Services only.

We do not address an issue not raised below. *Richter v. Dairy Queen of Southern Arizona, Inc.,* 131 Ariz. 595, 643 P.2d 508 (App.1982).

## PETITION AGAINST CITY

■ In its special action petition against the City of Tucson, Kord's alleged that the City was operating an unlicensed ambulance service without having obtained a certificate of necessity from DHS. Kord's requested an injunction prohibiting the City from transporting injured and ill persons and requiring reinstatement of its earlier practice of simultaneously dispatching an ambulance with a paramedic vehicle. It is undisputed that the City does not have a certificate of necessity from DHS. It is also undisputed that its paramedic vehicles are not registered by DHS.

The statutes enacted pursuant to the constitutional referendum of November 1982 define "ambulance" as follows:

'Ambulance' means any publicly or privately owned surface, water or air vehicle, including a helicopter, especially designed and constructed or modified and equipped to be used, maintained or operated for transportation of individuals who are sick, injured, wounded or otherwise incapacitated or helpless.

A.R.S. § 36–2201(2). " 'Ambulance service' means a person who owns and operates one or more ambulances as defined in this article." A.R.S. § 36–2201(4). The director of DHS is authorized to license ambulances and ambulance services. A.R.S. §§ 36–2202(A)(5), 36–2212.

Pursuant to A.R.S. § 36–2213, the City's paramedic units are exempt from licensure and regulation. That section reads, in pertinent part, as follows:

This article shall not be construed to require the licensure or regulation of the following:

1. Vehicles provided or contracted for emergency medical services by a political subdivision, the primary purpose of which is to provide on the scene stabilization of the sick, injured, wounded or otherwise incapacitated or helpless person.

See also A.R.S. § 36–2231(F). A.R.S. § 36–2233 pertains to the issuance of certificates of necessity to operate an ambulance service. Subsection E of that section provides that:

Nothing in this section shall be construed to require a certificate of necessity for:

1. Vehicles and persons exempt from licensure pursuant to §§ 36–2213 or 36–2217.

The above statutes make it quite clear, therefore, that the legislature specifically intended to exclude paramedic vehicles from the statutes regulating ambulances and ambulance services. Thus, unless the City is operating something besides paramedic vehicles, Kord's was properly denied special action relief.

The procedures which the City began following in December 1986 provide that the initial responding vehicle is a paramedic unit.[1] A private ambulance is called later if the patient needs to be transported. However, if the patient requires immediate transportation because of his or her medical condition, the paramedic unit transports the patient. The latter procedure is specifically provided for in the statutes. A.R.S. § 36–2208(B) provides in part as follows:

This chapter shall not be construed to prevent any individual, law enforcement officer, public agency or member of a city, town, fire district or volunteer fire department from rendering on-site emergency medical care or, if, in terms of the existing medical situation, it is deemed not advisable to await the arrival of an ambulance, from transporting emergency medical patients to a hospital or an emergency receiving facility....

The only evidence which Kord's offered to support its allegation that the City is operating an ambulance service was a four-paragraph attachment to DHS's December 1986 cease and desist order and a three-page chart showing comparisons between calls received by the two holders of certificates of necessity in the first three months of 1986 and 1987. Both items were attached to the petition for special action. The attachment to the cease and desist order indicated that the president of Kord's told a DHS investigator that Kord's calls for the weekend of December 20 and 21, 1986, had decreased by 25%. That evidence is insufficient to show that the City is operating an unlicensed ambulance service.

Since Kord's made no effort to introduce any additional evidence which would support a finding that the City is operating an ambulance service, we find that the trial court correctly denied Kord's request for relief.

Affirmed.

LIVERMORE, P.J. and ROLL, J., concur.

---

1. The paramedic unit dispatched is the closest available unit, whether public or private. Both Kord's and Rural Metro Corporation apparently have at least one paramedic unit.