[No. B054757. Second Dist., Div. Seven. Aug. 12, 1992.]

JOAN McGLAUGHLIN SARGOY et al., Plaintiffs and Appellants, v. RESOLUTION TRUST CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Kollender & Sargoy, Kenneth J. Sargoy and Timothy T. Tierney for Plaintiffs and Appellants.

Fleming & Ingalls, Donald R. Ingalls, Jerome P. Doctors, Hancock, Rothert & Bunshoft, Aubin K. Barthold, Robert V. Richter and Michael L. Challgren for Defendants and Respondents.

**OPINION**

WOODS (Fred), J.—

## I.

### INTRODUCTION

Joan McLaughlin Sargoy (appellant) has appealed from a dismissal of her first amended complaint. Appellant brought the instant class action suit against Valley Federal Savings and Loan Association (Valley Federal), now operated by the Resolution Trust Corporation, alleging that Valley Federal's practice of offering higher interest rates to senior citizens violated the Unruh

Civil Rights Act.[1] Ms. Lois Lomeli (Lomeli), one of Valley Federal's branch managers, was also named as a defendant for allegedly aiding Valley Federal in it's purportedly unlawful discriminatory practice.[2] The trial court sustained Lomeli's and Valley Federal's demurrer to the complaint on the grounds that it failed to state a cause of action, refusing to give appellant leave to amend. The trial court implicitly found that Valley Federal's practice was consistent with California's well established public policy of assisting senior citizens as reflected in innumerable public and private sector discount and benefit programs. Relying on *Koire* v. *Metro Car Wash* (1985) 40 Cal.3d 24 [219 Cal.Rptr. 133, 707 P.2d 195], a California Supreme Court opinion that tacitly approved such age-based discounts, the trial court found that Valley Federal's practice did not constitute the type of insidious or arbitrary discrimination prohibited by the Unruh Civil Rights Act.

## II.

### ISSUES PRESENTED

The sole issue on appeal is whether a savings and loan association that offers higher interest rates to senior citizens engages in arbitrary discrimination violative of the Unruh Civil Rights Act.

## III.

### STANDARD OF REVIEW ON APPEAL

This appeal followed an order of dismissal after respondent's demurrer was sustained without leave to amend. ■ The purpose of a demurrer is to test the sufficiency of a complaint by raising questions of law. (*Nordlinger* v. *Lynch* (1990) 225 Cal.App.3d 1259, 1271 [275 Cal.Rptr. 684].) Furthermore, the court is to accept as true all allegations of fact contained in the

[1] The Unruh Civil Rights Act (Civ. Code, § 51) secures equal access to public accommodations and prohibits discrimination by business establishments. The Unruh Civil Rights Act, which was recently amended in 1987, provides, in pertinent part:

"All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

[2] "(a) Whoever denies, or who aids, or incites such denial, or whoever makes any discrimination, distinction or restriction on account of sex, color, race, religion, ancestry, national origin, or blindness or other physical disability contrary to the provision of Section 51 or 51.5, is liable for each and every such offense for the actual damages, and such amount as may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than two hundred fifty dollars ($250), and such attorney's fees as may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51 or 51.5." (Civ. Code, § 52.)

complaint. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311 [216 Cal.Rptr. 718, 703 P.2d 58].) ■ When a demurrer is sustained the reviewing court must determine whether the complaint states sufficient facts to state a cause of action. (*Ibid.*) The lower court will only be reversed for an abuse of discretion if there is a reasonable possibility that the complaint could have been cured by an amendment. (*Ibid.*)

IV.

STATEMENT OF FACTS

On March 26, 1990, appellant entered Valley Federal's Encino branch and sought to open a "PrimePlus" account. Appellant was informed that because she was under the age of 55, she did not qualify for the "PrimePlus" program.

Valley Federal's "PrimePlus" program enables persons age 55 and older to earn slightly higher interest rates on their deposit accounts than those afforded to persons under age 55. For instance, at the time complained of herein, a "PrimePlus" passbook account earned 7.00 percent interest, while a regular passbook account earned 5.25 percent interest.

On March 26, 1990, the very same day appellant was refused a "Prime-Plus" account, appellant filed this class action alleging Valley Federal violated the Unruh Civil Rights Act by refusing to allow her to receive the "PrimePlus" interest rate offered to senior citizens for her deposit account. Lomeli was individually named as a defendant for allegedly aiding Valley Federal in its unlawfully discriminatory practice. In addition, appellant alleged that she represented an entire class of similarly situated individuals under the age of 55 who also were ineligible for the senior citizen "Prime-Plus" deposit accounts.

On May 9, 1990, appellant filed a first amended complaint alleging the same one cause of action. Appellant sought damages of $250 for every nonsenior deposit account holder of Valley Federal who did not receive the "PrimePlus" "interest bonus." Appellant further sought an injunction to prohibit Valley Federal from offering the higher "PrimePlus" interest rates to senior citizens in the future.

On October 5, 1990, the trial court, relying on *Koire* v. *Metro Car Wash*, *supra*, 40 Cal.3d 24, sustained the demurrer of respondents without leave to amend, finding that Valley Federal's practice of offering higher interest rates to senior citizens did not violate the Unruh Civil Rights Act. Axiomatically,

the court found that since Valley Federal had not violated the Unruh Civil Rights Act, no liability could possible attach to respondents.

Appellant filed a timely notice of appeal.

## V.

### DISCUSSION

A. *Existing California Case Law Holds That Beneficial Treatment of Senior Citizens Does Not Constitute Invidious or Arbitrary Discrimination Violative of the Unruh Civil Rights Act.*

■ The trial court's decision is consistent with established California statutory law and case precedent.

Appellant argues that the Unruh Civil Rights Act bars every type of age-based preference regardless of the socially beneficial effects or justifiable interests supporting such favorable treatment. That, however, is not what the Unruh Civil Rights Act proscribes. Neither the language of Unruh itself nor the interpretation of the Unruh Civil Rights Act by the California courts have held that *all* distinctions based on age are unlawful. Rather, the California Supreme Court has held that Unruh prohibits only arbitrary, invidious or unreasonable discrimination. (*In re Cox* (1970) 3 Cal.3d 205, 216-217 [90 Cal.Rptr. 24, 474 P.2d 992].)

California courts have uniformly found discriminatory treatment to be reasonable, and thus nonarbitrary, *where a strong public policy exists in favor of such treatment.* (*Koire* v. *Metro Car Wash, supra*, 40 Cal.3d 24; *Starkman* v. *Mann Theatres Corp.* (1991) 227 Cal.App.3d 1491 [278 Cal.Rptr. 543]; *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) For instance, in *Koire* and *Starkman*, the California Supreme Court and Court of Appeal, respectively, recognized that age-based price discounts for the elderly are justified by social policy considerations and thus did not constitute arbitrary or invidious forms of discrimination. In each instance, the courts found that such age-based price preferences were not prohibited by the Unruh Civil Rights Act.

In *Koire* v. *Metro Car Wash, supra*, 40 Cal.3d 24, the California Supreme Court considered whether a car wash and nightclub that offered free admission on certain nights to women but not to men violated the Unruh Civil Rights Act. The defendants argued that their sex-based discounts were analogous to permissible age-based discounts. The Supreme Court rejected that argument and distinguished age-based price discounts from sex-based discounts, discussing at length the permissibility and desirability of offering discounts to senior citizens.

The Supreme Court observed:

"The public policy considerations applicable to price discounts for children or senior citizens are very different from those applicable to sex-based discounts. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . [S]*tate and federal legislation has been enacted to address the special needs of our elderly citizens.* (See, e.g., 42 U.S.C. § 1381 et seq. [supplemental security income]; Welf. & Inst. Code, § 12050 et seq. [eligibility for old age security benefits].) In *Marina Point, supra,* 30 Cal.3d at page 742, this court chronicled the special housing needs of the elderly, and the 'age-conscious' legislation aimed at meeting those needs, as evidence that public policy supported some age-based housing discrimination. The Legislature subsequently expressed its agreement. (See [Civ. Code, § 51.3].)

"*Children and elderly persons frequently have limited earning capacities which justify differential treatment in some circumstances.* . . .

". . . [M]*any elderly persons have limited incomes.* While efforts are being made to increase employment opportunities for senior citizens (see Unemp. Ins. Code, § 16000 et seq.), many are unable to work due to health problems. For others, retirement may even be legislatively encouraged or mandated. (See, e.g., *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410 [205 Cal.Rptr. 576], [upholding the constitutionality of a provision of the Judges' Retirement Law (Gov. Code, § 75000 et seq.) which decreases pension benefits to judges who fail to retire at age 70]; Gov. Code, § 20980 et seq.) *In addition, our society has recognized that senior citizens are entitled to retire at some point in their lives.*

"*Thus, price discounts for children or for the elderly are justified by social policy considerations as evidenced by legislative enactments.* . . . In fact, the Legislature has specifically provided for certain price discounts for senior citizens." (*Id.,* at pp. 37-38, italics added, fn. omitted.)

Similarly, in *Starkman* v. *Mann Theatres Corp., supra,* 227 Cal.App.3d 1491, the court recently considered whether the Unruh Civil Rights Act prohibits the offering of discount theater tickets to senior citizens and children. In that case, the trial court granted a motion for summary adjudication of the issues in favor of the large theater chain which offered such discounts, and the plaintiff appealed. Drawing heavily upon the Supreme Court's reasoning in *Koire*, the appellate court agreed with the trial court that age-based theater discounts were not arbitrary, unreasonable or unfair.

In so holding, the *Starkman* court noted: "Once someone retires, income obviously diminishes. *Encouraging and enabling citizens to enjoy life and the benefits of our society as they reach an elderly age is a favored public policy.*

"To paraphrase Congress, traditional concepts of a democratic society recognize the inherent dignity of the individual. Senior citizens of our nation are entitled to be secure in retirement in health, honor, and dignity. After years of being productive and contributing to the economy and participating in and contributing to meaningful civic, cultural, educational, business and recreational activities, they deserve to enjoy what this nation may offer. (42 U.S.C. § 3001.) Offering discounts to seniors for both the necessities and the pleasures of life recognizes that 'senior citizens are entitled to retire at some point in their lives.'" (227 Cal.App.3d at pp. 1499-1500.)

The court also reasoned that "[a]ll members of society regardless of their sex, race, religion or national origin will, in the normal course of events, be members of each class entitled to the discount." (227 Cal.App.3d at p. 1501.)

The same policy considerations recognized by the California Supreme Court and the Court of Appeal in justifying senior price discounts apply equally to Valley Federal's "PrimePlus" interest rates. No rational distinction can be drawn between senior citizen price discounts and the preferential interest rates offered to seniors. Appellant does not attempt to make such a distinction.

Its worthy to note that appellant does not attack the Supreme Court's distinction in *Koire* between sex-based price discounts and age-based price discounts. Nor, does appellant challenge the *Koire* court's explanation that age-based price discounts are consistent with public policy and, therefore, are not prohibited as arbitrary discrimination.

Rather, to avoid the Supreme Court's reasoning in *Koire*, appellant contends that such reasoning should not be followed simply because it is dicta. However, appellant offers no other basis why the Supreme Court's persuasive language and reasoning should be disregarded. Merely characterizing the Supreme Court's reasoning as dicta does not mean that such reasoning is wrong, unreasonable, or should not be followed.[3]

Nevertheless, despite labeling the *Koire* court's rationale as dicta, appellant advances *Koire* for the proposition that a discriminatory practice may be

---

[3]See *Smith* v. *County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [262 Cal.Rptr. 754], (The dictum of the Supreme Court "while not controlling authority, carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic."); *Santa Monica Hospital Medical Center* v. *Superior Court* (1988) 203 Cal.App.3d 1026, 1033 [250 Cal.Rptr. 384], ("We are, of course, mindful that dictum of the Supreme Court commands serious respect."); *Bunch* v. *Coachella Valley Water Dist.* (1989)

permitted only where specifically exempted by the Legislature. In support of this contention, appellant argues that the *Koire* court cited three statutory exemptions to the Unruh Civil Rights Act where the Legislature has specifically provided for certain age-based price discounts.

Appellant misapplies *Koire*. In *Koire*, the Supreme Court did not create, nor did it even refer to, statutory exemptions in the Unruh Civil Rights Act. In fact, contrary to appellant's assertion, no statutory exemption is required. The three statutes cited by the *Koire* court are merely illustrative of the Legislature's awareness and recognition of these important social policy considerations. Other than arguing *Koire*'s implication, appellant cites no case in support of appellant's novel theory. Accordingly, appellant's supposition that age-based benefits or preferences are only lawful if there is a statutory exemption from Unruh has no merit.

Moreover, appellant not only makes no attempt to challenge the holding in *Starkman* but fails to even mention it.

Appellant presents no reason why *Koire* or *Starkman* are incorrect or should not be followed here. Accordingly, this court follows *Koire*'s rationale, as did the *Starkman* court, and holds that offering higher interest rates to senior citizens does not constitute the type of arbitrary and invidious discrimination falling within the ambit of the Unruh Civil Rights Act.

B. *Courts in Other Jurisdictions Have Held That Age-based Preferences Do Not Violate Civil Rights Laws.*

Although most states have public accommodations statutes similar to the Unruh Civil Rights Act and comparable federal legislation has also been enacted, no case law from any other jurisdiction has been found which prohibits the favorable treatment of senior citizens. Accordingly, appellant has failed to cite a single case from any jurisdiction in which a court has held that senior citizen discounts or preferences violated any civil rights law. Furthermore, a number of courts in other jurisdictions have addressed the legality of similar age-based preferences.[4] These courts universally have found that such preferences do not constitute the type of invidious and

---

214 Cal.App.3d 203, 212 [262 Cal.Rptr. 513], quoting the text ("We are persuaded that the far-reaching and elaborate analysis undertaken in *Belair* [v. *Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550 (253 Cal.Rptr. 693, 764 P.2d 1070)] should be given application beyond the limited facts of that case, and that the principled dicta of that opinion should guide our consideration of the issues presented in the case before us.").

[4]Non-California courts upholding the legality of discrimination in favor of the elderly include: *Doran* v. *Cullterton* (1972) 51 Ill.2d 553 [283 N.E.2d 865, 868] (homestead exemption for persons over 65); *State* v. *Morgan* (1966) 30 Wis.2d 1 [139 N.W.2d 585, 587-588] (tax

arbitrary discrimination violative of state and federal civil rights laws.[5] In examining the propriety of such preferences, these courts, similar to the *Koire* and *Starkman* courts, recognized that age-based preferences are justified by compelling social interests.

For example, in *Rannels* v. *Hargrove* (E.D.Pa. 1990) 731 F.Supp. 1214, virtually identical to the present case, the plaintiff sued the Pennsylvania Secretary of Banking, challenging a bank's program in which persons age 50 and older were given an extra .25 percent interest on their certificates of deposit. Plaintiff alleged that such age-based preferences violated the equal protection clause of the United States Constitution.

The court however, held otherwise: "Aiding the elderly is plainly a legitimate state interest. . . .

"There remains only the question of whether the encouragement or toleration of the Club 50 program bears a rational relationship to that interest. The answer again must be yes. The effect of the program is to give a modest sum to older bank customers. This is no different in its effect than a tax break, or an increase in Social Security payments, or another form of

---

relief for certain persons 65 or older); *Board of Assessors of Everett* v. *Formosi* (1965) 349 Mass. 727 [212 N.E.2d 210] (property tax exemption in favor of the elderly); *Town Taxi Inc.* v. *Police Com'r of Boston* (1979) 377 Mass. 576 [387 N.E.2d 129] (approving of 20 percent discount fare for elderly passengers); *Campbell* v. *Barrund* (1977) 58 A.D.2d 570 [394 N.Y.S.2d 909] (approving of zoning ordinance which limited occupancy in certain districts to persons 55 years of age or older); *Prop. Owners Ass'n, etc.* v. *TP. of No. Bergen* (1977) 74 N.J. 327 [378 A.2d 25, 5 A.L.R.4th 908] (rent control ordinance to protect the elderly); *Application of Hawaii Elec. Light Co., Inc.* (1979) 60 Hawaii 625 [594 P.2d 612, 626] (noting that elderly persons are deserving of special protection).

[5]California's Legislature has enacted numerous laws that provide benefits to senior citizens. For example, Public Utilities Code section 99155, subdivision (a) provides for the possibility of reduced fares to senior citizens holding federal Medicare identification cards. Public Resources Code section 5011 allows senior citizens to pay reduced rates to use the state park system. Moreover, Education Code section 89330 provides free tuition for students age 60 or older for classes taken at California State University campuses. In addition, Insurance Code section 11628.3 requires auto insurers to provide reduced auto insurance premiums to certain drivers older than age 55.

Furthermore, courts are required to extend special treatment to senior citizens. Litigants over 70 years of age receive preference in trial setting. (Code Civ. Proc., § 36.)

Additionally, the California Legislature sought to provide extra protection for senior citizens by its passage of Business and Professions Code section 17206.1 which imposes extra penalties against parties that violate the Unfair Competition Act if their conduct adversely affects senior citizens.

In addition, the Legislature created the California State Department of Aging to enact programs to serve the special needs of senior citizens. These programs include the Senior Companion Program and the Foster Grandparent Program. (Welf. & Inst. Code, §§ 9520, 9540.) These programs are specifically designed to serve senior citizens and are not available to others.

subsidy. *For this program to be stricken, many other programs favoring the old (or, indeed, the young) would have to be eliminated as well. That would run flatly against a long string of precedents upholding programs that assist the elderly.*" (Italics added; fn. and citations omitted.) (731 F.Supp. at p. 1226.)

The issue of providing senior citizens with special preferences was also recently considered in *Rannels* v. *Meridian Bancorp, Inc.* (E.D.Pa. 1989) 718 F.Supp. 10, affirmed (3d Cir. 1989) 893 F.2d 1331, certiorari denied, 494 U.S. 1017 [108 L.Ed.2d 495, 110 S.Ct. 1320]. In *Meridian*, the same plaintiff as in *Hargrove* sued Meridian Bank alleging that the bank's Club 50 program violated the equal protection clause of the United States Constitution. Meridian's "Club 50" program offered price discounts and other services to bank customers more than 50 years old.

The bank filed a motion for summary judgment, which was granted. The district court held that: (1) the bank's practices did not constitute the requisite "state action," and (2) even if their practices did constitute such "state action," discrimination on the basis of age was justifiable under the United States Constitution. (718 F.Supp. at pp. 12-13.)

In upholding the validity of the bank's Club 50 program, the court stated: "*First, providing benefits to older citizens has long been recognized a legitimate state interest.* For example, the tax system, the Social Security system, and the Pennsylvania Lottery, all provide benefits to older citizens. Second, the Club 50 program bears a rational relationship to that legitimate interest. In numerous cases, courts have upheld the constitutionality of programs that favor senior citizens. . . .

"*In sum, plaintiff's claims are so devoid of merit that they border on the legally frivolous and tread dangerously close to justifying Rule 11 sanctions.* We suggest that plaintiff devote his youthful energies to a cause more worthy than the denial of picayune benefits to those whom time has rendered less fortunate than he." (Italics added.) (718 F.Supp. at pp. 13-14.)

Valley Federal's "PrimePlus" program is similar to Meridian's Club 50 program challenged in the two *Rannels* cases. The equal protection clause of the United States Constitution, like the Unruh Civil Rights Act, seeks to eliminate invidious and arbitrary discrimination. It therefore seems inconceivable that a discriminatory practice found to be constitutionally valid would somehow offend the letter and spirit of the Unruh Civil Rights Act.

As noted herein, many courts have held that age-based practices which favor the elderly do not violate civil rights laws. Such practices promote the public policy of assisting the elderly. Accordingly, this court reaches the

same conclusion universally reached by courts in other jurisdictions and holds that Valley Federal's "PrimePlus" does not violate the Unruh Civil Rights Act.

C.  *Reversing the Trial Court's Decision Would Destroy Innumerable Price Discounts and Preferences Offered by Businesses to Senior Citizens.*

In *Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142 [278 Cal.Rptr. 614, 805 P.2d 873], the court noted that it is appropriate for the judiciary to consider the adverse consequences of prohibiting conduct under the Unruh Civil Rights Act. (*Id.* at pp. 1165-1169.) Like Valley Federal, many businesses offer senior citizens certain price discounts or benefits. Senior citizens readily can obtain discount fares and prices from restaurants, amusement parks, museums, hotels, dry cleaners, pharmacies, zoos, bowling alleys, golf courses, barbershops, beauty parlors, parks, tourist attractions, sporting events, theatres, buses, trains, airlines as well as many other activities and events.

Should this court reverse the trial court's decision, every discount or preference offered senior citizens would be placed in jeopardy by eliminating countless socially beneficial practices. Such a result would have a profound impact on the quality of life enjoyed by senior citizens throughout this state. The fundamental purpose of the Unruh Civil Rights Act is the elimination of antisocial discriminatory practices—not the elimination of socially beneficial ones. Reversal of this case would only serve to pervert the good intentions of the Unruh Civil Rights Act. Accordingly, the trial court's decision to sustain the demurrer is affirmed by this court.

## VI.

### CONCLUSION

The judgment is affirmed. Costs of appeal are awarded to respondents.

Lillie, P. J., and Johnson, J., concurred.