916 P.2d 1124

**Edmund D. KAHN, Plaintiff/Appellant,**

v.

**Floyd THOMPSON; Affirmative Action Division of the City of Tucson, Tucson City Manager's Office; Isadore Davis; the City of Tucson Human Relations Commission and the Members Thereof, Defendants/Appellees.**

No. 2 CA–CV 95–0167.

Court of Appeals of Arizona, Division 2, Department B.

Nov. 30, 1995.

Review Denied May 21, 1996.

Edmund D. Kahn, Tucson, in Propria Persona.

Thomas J. Berning, City Attorney by Merle Joy Turchik, Tucson, for Defendants/Appellees.

## OPINION

ESPINOSA, Presiding Judge.

Appellant Edmond D. Kahn[1] appeals from a grant of summary judgment in favor of

---

1. Kahn's original complaint in the superior court     as well as his notice of appeal listed "The Ari-

appellees the City of Tucson Affirmative Action Division, City Manager's Office, Human Relations Commission, and officers thereof. Kahn contends that appellees violated the Human Relations Ordinance of the Tucson Code when they failed to investigate his claims that certain discounts for senior citizens and children constitute illegal age discrimination. The superior court concluded on public policy grounds that such discounts are reasonable and found no violation of the ordinance. For the reasons discussed below, we affirm.

### Factual and Procedural Background

In the spring of 1994, Kahn filed two complaints with the Affirmative Action Division of the Tucson City Manager's Office (Division). The first alleged unlawful discrimination by the city's Randolph Park tennis facility in charging adults over 18 and under 60 fees of $1.50 while charging seniors and juniors only $1.00. The second complaint alleged that Smitty's Super Store discriminated by offering a 10% discount every Tuesday to customers age 60 and over. Kahn alleged that these practices were prohibited by the Tucson Human Relations Ordinance, Tucson Code, Chapter 17 (ordinance).

In June, the Division informed Kahn by letter that it did not have jurisdiction to review complaints directed at the city, but that it was "in the process of completing its inquiry" into his claim against Smitty's. In a July 28 letter, the Division advised Kahn that it had completed its inquiry and determined that Smitty's was not in violation of the ordinance and that the Division would not investigate his complaint. Kahn requested review of that decision by the Tucson Human Relations Commission, which confirmed the Division's findings and decision. Kahn then filed a complaint for special action writ of mandamus in superior court to compel the Division to "perform the acts required of them." Appellees moved for summary judg-

ment, primarily on the ground that there had been no violation of the ordinance. The trial court granted the motion, finding senior citizen discounts reasonable and a favored public policy.[2]

On appeal, Kahn contends the trial court erred in granting summary judgment for appellees because the Division violated its mandatory duty to investigate his claims, and that it was error for the court to conclude as a matter of law that senior citizen discounts do not constitute unlawful age discrimination. He also claims violations of his constitutional rights and challenges the constitutionality of the ordinance.

### Mandamus

■ Kahn first argues that summary judgment was improper because appellees failed to investigate his charges and furnish copies of the charges to the respondents, "contrary to the specific ministerial duties imposed upon them by the Tucson Human Relations Ordinance." We disagree.

The relevant portions of the ordinance provide:

**Sec. 17–15.  Complaint Procedures.**

(a) ... The division shall furnish the respondent with a copy of the charge and shall promptly investigate the allegations of discriminatory practices set forth in the charge.

(b) The division shall, within one hundred twenty (120) days of receiving the charge, render written findings as to whether there is reasonable cause to substantiate the charge.

The ordinary meaning of "investigate" is "[t]o observe or inquire into in detail." American Heritage Dictionary 675 (2d college ed. 1982). The record shows that after receiving Kahn's complaints, the Division made an "inquiry" into the allegations against Smitty's,[3] and informed Kahn by let-

---

zona Constitutional Rights Union" as an additional plaintiff; however, the trial court dismissed it as a party and no appeal was taken from that ruling.

2.  The trial court did not address the issue of mandamus.

3.  Kahn's complaint concerning the city tennis facility was apparently not acted upon because the Division determined it did not have jurisdiction over public entities. We need not resolve that issue in view of our disposition of Kahn's claims on their merits, *infra*.

ter of its conclusion that the facts alleged did not violate the ordinance. In response to Kahn's interrogatories, the Division stated that it had accepted Kahn's factual allegations against Smitty's as true. Kahn does not explain what more there was for the Division to investigate, nor can we fathom why the Division's inquiry was not an "investigation" for the purpose of determining whether the charge could be substantiated. That the Division determined not to pursue the matter further does not mean its initial inquiry cannot be considered an investigation. As Kahn apparently concedes, "[h]ow the bureaucrats investigate and the extent of the investigation is, probably, discretionary." We conclude that sufficient investigation was conducted to satisfy the requirements of the ordinance, and Kahn makes no showing that the Division was required to do more.[4]

█ Kahn's argument is also meritless because the Division's duty here was not ministerial. Ministerial duties are those which permit a public officer only one course of action on an admitted state of facts. *State Board of Barber Examiners v. Walker,* 67 Ariz. 156, 192 P.2d 723 (1948). Mandamus may compel the performance of a ministerial duty or compel the officer to act in a matter involving discretion, but it may not designate how that discretion shall be exercised. *City of Phoenix ex rel. Backstein v. Superior Court In and For Maricopa County,* 6 Ariz. App. 327, 432 P.2d 471 (1967). Nor is it available to compel an officer to perform acts not authorized or required by some plain provision of the law. *Ruck Construction Company, Inc. v. City of Tucson,* 116 Ariz. 533, 570 P.2d 220 (App.1977).

█ The purpose of the Human Relations Ordinance is to eliminate "prejudice and discrimination" in places of public accommodation, employment and housing. § 17–1. The subsection prohibiting discrimination in public places provides that no "facility or service shall be refused or restricted because of race, color, religion, ancestry, sex, age, physical handicap, national origin, sexual or affectional preference, or marital status," nor shall

these factors result in any person being "unwelcome, objectionable, unacceptable, undesirable or not solicited." § 17–12(a). Price discounts are not among the prohibited acts delineated in the ordinance, thus Kahn's claims do not expressly state violations of the ordinance. Consequently, the question of whether age-related discounts fall within the ordinance, or whether such discounts result in other persons being "refused or restricted" from service, are matters involving interpretation of the ordinance. The Division is entitled to exercise its judgment and discretion in determining the scope of the ordinance since it is charged with enforcing it. *See Kubby v. Hammond,* 68 Ariz. 17, 198 P.2d 134 (1948). Because the Division had discretion to determine whether Kahn had stated a colorable claim, and obviously exercised that discretion, mandamus is not available. *See Kord's Ambulance Service, Inc. v. City of Tucson,* 157 Ariz. 311, 757 P.2d 115 (App.1988).

█ That the Division failed to carry out the ministerial act of furnishing a copy of the charge to the respondent does not require a different result. Reading the ordinance as a whole, the word "shall" as applied to providing notice of a non-colorable charge may be reasonably construed as used in a directive rather than mandatory sense. *See Arizona Downs v. Ariz. Horsemen's Foundation,* 130 Ariz. 550, 555, 637 P.2d 1053, 1058 (1981) (construing racing commission's statutory mandate to recognize permittee agreements as "directory" when not in the public interest or convenience). Under the circumstances here, providing notice would have been pointless, and Kahn neither alleges nor shows any resulting prejudice.

### Senior Citizen Discounts

█ We also find no error in the trial court's conclusion that senior citizen discounts do not amount to unlawful age discrimination. Section 17–12 of the ordinance makes it unlawful for any place of public accommodation "to discriminate against any person" because of race, color, religion, an-

---

4. Kahn places much stock in the Division's statement in the July 28 letter that it would "not investigate" his complaint. In view of the undis-

puted nature of Kahn's factual allegations and the record before us, we do not find that statement determinative.

cestry, sex, age, physical handicap, or national origin. "Discriminate" is defined as "any distinction with respect to any person" based on the above factors. § 17–11(a). Thus, as Kahn urges, the language of the ordinance can be construed literally to prohibit any pricing practice based on age.

▮▮▮ The plain language of a statute is normally controlling, except in the case where it would lead to an absurd result or a result at odds with the intent of its drafters. *Resolution Trust Corp. v. Western Technologies, Inc.*, 179 Ariz. 195, 877 P.2d 294 (App. 1994). In construing the provisions of an ordinance, the principal rule is to ascertain and give effect to the intent of the legislative body. *Sandblom v. Corbin*, 125 Ariz. 178, 608 P.2d 317 (App.1980). In doing so, we consider the words, context, subject matter, effects and consequences, spirit and reason of the law, and other acts *in pari materia. State v. McGriff*, 7 Ariz.App. 498, 441 P.2d 264 (1968).

Even without revisiting the express purpose and specific provisions of the Tucson civil rights ordinance as noted above, it is readily apparent that prohibiting age-related discounts is not an intended objective or construction of the legislation. Since the enactment of the ordinance in 1974, the Tucson City Council has specifically established numerous mandatory senior citizen discounts. These include reduced rates for the use of city tennis courts, § 21–10, city-sponsored recreation trips, § 21–13.2, city gymnasium equipment, §§ 21–14.1, 14.2, city golf courses, § 21–25.3, city zoo admission, § 21–51, and city buses, § 2–18. While Kahn argues that all of these discounts are "arbitrary" and equally prohibited, we believe the city's actions are a clear indication of legislative intent, as well as a reflection of widely accepted public policy.

We have found no Arizona precedent dealing with this issue. As appellees point out, however, Tucson's Human Relations Ordinance provides guidelines which are substantially similar to those found in California's Civil Rights Act.[5] In construing its Act, California courts have upheld price discounts for senior citizens and children in cases factually similar to the one before us. *See Starkman v. Mann Theatres Corp.*, 227 Cal. App.3d 1491, 278 Cal.Rptr. 543 (1991) (age-based admission discounts not an arbitrary discrimination practice since all persons are eligible, first as children, then as seniors, and both groups generally have reduced earning capacities); *Sargoy v. Resolution Trust Corp.*, 8 Cal.App.4th 1039, 1043, 10 Cal. Rptr.2d 889, 891 (1992) (denial of preferential account offered only to customers over 50 not violative of Act because beneficial treatment of seniors not "arbitrary, invidious or unreasonable discrimination"). Our research discloses no jurisdiction where age-related discounts have been found violative of civil rights. Indeed, it appears that most courts addressing this or similar issues have reached an opposite conclusion, upholding the legality of age-based practices which favor the elderly.[6] We agree with those courts in principle and with appellees in particular that such practices are not the invidious dis-

---

**5.** California Civil Code § 51 (the Unruh Act) states in pertinent part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Although the Unruh Act does not delineate age as a category, it has been construed to apply to age classifications. *Starkman v. Mann Theatres Corp.*, 227 Cal.App.3d 1491, 278 Cal.Rptr. 543 (1991).

**6.** *See e.g. Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) (upholding constitutionality of allocating higher proportion of welfare benefits to elderly); *Acevedo v. Nassau County, New York*, 500 F.2d 1078 (2d Cir.1974)

(preserving low income housing for senior citizens but not all low income families does not deny equal protection); *Rannels v. Hargrove*, 731 F.Supp. 1214 (E.D.Pa.1990) (upholding preferential interest rates for depositors 50 and over); *Action Alliance for Senior Citizens of Greater Philadelphia v. Shapp*, 400 F.Supp. 1208 (E.D.Pa. 1975) (upholding constitutionality of property tax relief for senior citizens); *Metropolitan Dade County Fair Housing and Employment Appeals Board v. Sunrise Village Mobile Home Park, Inc.*, 511 So.2d 962 (Fla.1987) (age restrictions for mobile home park); *Application of Hawaii Elec. Light Co.*, 60 Haw. 625, 594 P.2d 612 (1979) (elderly persons deserving of special utility rates); *Doran v. Cullerton*, 51 Ill.2d 553, 283 N.E.2d 865 (1972) homestead exemption for persons 65 and older); *Taxpayers Association of Weymouth Township, Inc. v. Weymouth Township*, 80 N.J. 6, 364 A.2d 1016 (1976), *cert. de-*

crimination which the Tucson ordinance seeks to prevent. Accordingly, we find no error in the trial court's conclusion.

Kahn also alleges violation of his "fundamental rights" and cites the equal protection clause of the Arizona Constitution, which has been held equivalent to the equal protection guarantee of the Fourteenth Amendment to the United States Constitution, *J.C. Penney Co., Inc. v. Arizona Dept. of Revenue*, 125 Ariz. 469, 610 P.2d 471 (App. 1980), and provides:

**Equal privileges and immunities:**

No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations.

Ariz. Const. art. II, § 13. An equal protection challenge, of course, is not applicable to conduct between private parties. *See Rannels v. Meridian Bancorp, Inc.*, 718 F.Supp. 10 (E.D.Pa.), *aff'd.*, 893 F.2d 1331 (3d Cir. 1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1320, 108 L.Ed.2d 495 (1990) (bank's senior citizen preference did not constitute the requisite state action). However, because Kahn also challenges the age discounts provided by the city, we address the merits of this claim.

It is well settled that age-based classifications do not trigger strict judicial scrutiny as do distinctions based on "suspect" classifications involving immutable characteristics such as race or national origin. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Williams v. Tucson Unified School District No. 1*, 158 Ariz. 32, 760 P.2d 1081 (App.1987), *cert. denied*, 489 U.S. 1019, 109 S.Ct. 1138, 103 L.Ed.2d 199 (1989). *See also Lamb v. Scripps College*, 627 F.2d 1015 (9th Cir.1980). Persons classified by age do not constitute "a 'discrete and insular' group, ... in need of 'extraordinary protection from the majoritarian political process.'" *Murgia*,

427 U.S. at 313, 96 S.Ct. at 2567, 49 L.Ed.2d at 525 (citation omitted). Furthermore, regulation of economic matters does not ordinarily engage fundamental rights. *See Exxon Corp. v. Eagerton*, 462 U.S. 176, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983); *Big D Construction Corp. v. Court of Appeals, Division One*, 163 Ariz. 560, 789 P.2d 1061 (1990). Kahn has cited no authority indicating that the denial of a fractional discount for a recreational activity encroaches on a fundamental right, nor are we aware of any.

Where a classification does not involve a suspect grouping or a constitutionally protected interest, a denial of equal protection will be found only if there is no rational basis for the classification. *Murgia; Williams.* "[U]nless a fundamental right is violated or an invidious classification is created, a statute impinging on the equal privileges and immunities of a class of Arizona residents will be upheld if it has a rational basis." *Trujillo v. Superior Court of Pima County*, 134 Ariz. 355, 356, 656 P.2d 644, 645 (App.1982), quoting *Tahtinen v. Superior Court, Pinal County*, 130 Ariz. 513, 515, 637 P.2d 723, 725 (1981). The same standard applies when the challenged discrimination *favors* a particular class. *Smith v. City of Tucson*, 153 Ariz. 372, 736 P.2d 1184 (App. 1987). In its signed minute entry, the trial court observed:

[Various] cases reason that all members of society regardless of their sex, race, religion or national origin will, in the normal course of events, be members of the class entitled to the discount. These cases recognize that senior citizens are entitled to retire at some point in their lives. Further, that upon retirement income diminishes and that encouraging and enabling citizens to enjoy life and the benefits of society as they reach an elderly age is a favored public policy.

Indeed, our society has long maintained and even institutionalized traditions of providing

nied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977) (zoning ordinance limiting residency to persons 52 and over); *Parrino v. Lindsay*, 29 N.Y.2d 30, 323 N.Y.S.2d 689, 272 N.E.2d 67 (1971) (persons 62 and over exempt from rent increases); *Campbell v. Barraud*, 58 A.D.2d 570, 394 N.Y.S.2d 909 (1977) (zoning ordinance limiting occupancy to persons 55 and over); *State ex*

rel. Harvey v. Morgan, 30 Wis.2d 1, 139 N.W.2d 585 (1966) (tax relief for persons 65 and over); *but see Mountain States Legal Foundation v. Utah Public Service Commission*, 636 P.2d 1047 (Utah 1981) (utility commission's fact finding inadequate to justify "senior citizen rate" based on general proposition senior citizens receive less income and consume less power).

benefits to older citizens, as seen in the tax system, social security system, and housing laws to name a few. We conclude that the age-based discounts complained of by Kahn have a sufficiently rational basis, as articulated in the trial court's judgment and the case law of many other jurisdictions,[7] and therefore do not deny Kahn the equal protection of the laws.

### Constitutionality of the Ordinance

Finally, Kahn contends that the ordinance itself is unconstitutional because it "restricts Tucsonans' freedom of association and liberty of contract by decreeing that Tucson citizens *must* associate with, do business with and contract with persons of *all* races, *all* nationalities, sexual proclivities, etc." Kahn did not raise this theory below and therefore it is waived on appeal. *Owens v. City of Phoenix*, 180 Ariz. 402, 884 P.2d 1100 (App.1994). In any event, the United States Supreme Court recently upheld the constitutionality of a similar anti-discrimination law, *Hurley v. Irish–American Gay Group*, 515 U.S. ——, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995), and has found no generalized right of social association under the First Amendment. *City of Dallas v. Stanglin*, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) (city ordinance restricting certain dance halls to persons age 14 to 18 did not infringe on First Amendment right of association). *See also New York State Club Association, Inc. v. City of New York*, 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) (city ordinance prohibiting private clubs from practicing invidious discrimination did not infringe on members' rights of association). Accordingly, we find no constitutionally guaranteed freedoms implicated by the Tucson civil rights ordinance.

The judgment of the superior court is affirmed.

LIVERMORE and HATHAWAY, JJ., concur.

---

7. See cases cited in note 6, *supra*.