[No. B047058. Second Dist., Div. Five. Feb. 27, 1991.]

ISAAC STARKMAN, Plaintiff and Appellant, v.
MANN THEATRES CORPORATION, Defendant and Respondent.

**COUNSEL**

Raiskin & Revitz and Steven J. Revitz for Plaintiff and Appellant.

O'Melveny & Myers, Richard N. Fisher and Renee P. Turkell for Defendant and Respondent.

**OPINION**

**ASHBY, Acting P. J.**—For decades, Americans have gone to the movies expecting popcorn and discount tickets for senior citizens and children. This suit challenges a theater's right to offer these price discounts.

### FACTS

Plaintiff Isaac Starkman went with his wife and two children to the Mann's National Theatre in Westwood, California, owned by defendant Mann Theatres Corporation.[1] Plaintiff paid the $6 general admission price for his ticket as he did not qualify for either the senior citizen discount (60 years and older) or the discount for children (12 years of age or under).[2]

Plaintiff brought this suit alleging the theater's pricing policy denied him equal protection under the Unruh Civil Rights Act. (Civ. Code, § 51.) Thereafter, defendant brought a motion for summary adjudication of issues alleging the price discounts did not violate the Unruh Civil Rights Act. Defendant supported its motion with a declaration from its director of operations. The director stated that defendant, in a prior corporate form,

---

[1] Part of defendant's corporate name was erroneously spelled in the complaint as "theaters."

[2] The facts do not reveal the exact age of plaintiff's wife or children or the prices paid for their tickets. However, there are indications the children were between 17 and 13 years of age.

had offered discounts to children and senior citizens since the early 1920's; that these discounts were a uniform fixture in the motion picture industry as well as other public amusement businesses. He further stated: "[t]his industry tradition is rooted in the belief that the theatrical exhibition of motion pictures is a family-oriented business and the belief that children and senior citizens are worthy of a discount because they generally have less discretionary disposable income and limited earning opportunities, and tend to be economically dependent (either upon fixed incomes or upon parents)." His declaration revealed that defendant strongly preferred to continue these discounts because "(a) we continue to believe that it is a socially responsible practice which emphasizes the family-oriented nature of our business, benefits disadvantaged age groups, and promotes public good will; and (b) we believe that these discounts are so well-established that the public expects them and takes them for granted to the point that their elimination would be regarded by our customers as venal and mean-spirited, and would subject our business to adverse public reaction, resentment, hostility and ill will." In discussing defendant's pricing policies, he noted that the price for the full price ticket was first determined; the price for senior and children discount tickets was then set at one-half of the full price ticket. He noted the cost of full price admissions was based solely upon what the market would bear and the full price ticket did not attempt to recoup any moneys potentially lost from the sale of discount tickets.

In response, plaintiff argued defendant's pricing policies were arbitrary and capricious. In support of this position, plaintiff submitted the declaration of defendant's ex-employee who had been a cashier and usher for approximately three years. The ex-employee declared that in his observations, "in probably 90% of the cases, [tickets at defendant's theater] were purchased by adults." Plaintiff also submitted the declaration and resume of Robert Avery, associate professor of consumer economics and housing at Cornell University, along with an article Avery co-authored for the Federal Reserve Bulletin, entitled "Financial Characteristics of High-Income Families." Avery attested that the conclusions in the article were accurate as based upon an accurate survey of the American population. In summarizing the article, Avery stated: "First, the use of debt, in terms of both incidents and payments levels, is highest for families whose heads are 25-54 years of age and lowest among families with heads 55 years of age and older. Second, about 43 percent of the high-income families headed by persons aged 65 years or more had a net worth of at least one million dollars. Third, except for young households, the distribution of families across the various levels of wealth does not appear to be strongly related to age."

The court granted defendant's motion for summary adjudication of issues finding that the discounting of admission fees for children aged 12 and

younger and for senior citizens aged 60 and older did not constitute unreasonable, arbitrary or invidious discrimination and therefore did not violate the Unruh Civil Rights Act. Plaintiff appeals from the judgment entered in favor of defendant.[3]

## DISCUSSION

### SUMMARY JUDGMENT

In the hearing below the court ruled upon defendant's motion for summary adjudication of issues finding that defendant's pricing policy did not violate the Unruh Civil Rights Act (Civ. Code, § 51). ■ Matters summarily adjudicated utilize the same procedural rules as summary judgment motions. "Summary judgments look behind the pleadings to determine if the claims or defenses of a party are sham or without any evidence to support the claim." (*Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 976 [243 Cal.Rptr. 277].) The proponent of the summary judgment must establish that, based upon the declarations presented (Code Civ. Proc., § 437c, subd. (c)) and those matters of which courts can take judicial notice (*Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615]; *McKinney* v. *County of Santa Clara* (1980) 110 Cal.App.3d 787, 794 [168 Cal.Rptr. 89]), there are no triable issues of fact. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Admissible evidence includes facts presented upon declaration of persons with personal knowledge, and those attested to by experts. (Code Civ. Proc., § 437c, subd (d); Evid. Code, § 801; see, e.g., *Wynner* v. *Buxton* (1979) 97 Cal.App.3d 166, 172-173 [158 Cal.Rptr. 587].) In addition, the court may consider those facts and propositions of generalized knowledge which are so universally known they cannot reasonably be disputed. (Evid. Code, § 451, subd. (f).)

■ "We recognize that summary judgment procedures are viewed as 'drastic' [citations]; however, the purpose of a summary judgment is to expedite litigation by avoiding needless trials' [citation]. If there are no triable issues, summary judgment is appropriate." (*Burton* v. *Security Pacific Nat. Bank, supra,* 197 Cal.App.3d at pp. 976-977.)

### UNRUH CIVIL RIGHTS ACT

■ The issue before us is whether the Unruh Civil Rights Act prohibits a movie theater from offering discount tickets to senior citizens and children. Plaintiff's argument is that basing prices upon age classifications violates the act.

---

[3] Plaintiff's complaint also charged that defendant was liable for negligence and reckless endangerment for failing to control other patrons. These causes of action have subsequently been dismissed and do not relate to the issues on appeal.

■ The Unruh Civil Rights Act, California Civil Code section 51,[4] bars business establishments from "engaging in any form of arbitrary discrimination . . . ." (*O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790, 794 [191 Cal.Rptr. 320, 662 P.2d 427].) Although the act makes specific references to "particular bases of discrimination—'sex, color, race, religion, ancestry or national origin' [or blindness or other physical disability]—[these categories are] illustrative rather than restrictive." (*Ibid.*) "The Act is to be given a liberal construction with a view to effectuating its purposes." (*Koire* v. *Metro Car Wash* (1985) 40 Cal.3d 24, 28 [219 Cal.Rptr. 133, 707 P.2d 195].) Thus, even though the act does not delineate "age" as a category, it may be applicable in situations in which business establishments make classifications based upon age. (See, e.g., *O'Connor* v. *Village Green Owners Assn., supra,* 33 Cal.3d 790; *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].)

■ Neither party suggests theaters are not business establishments within the act. (*Jones* v. *Kehrlein* (1920) 49 Cal.App. 646 [194 P. 55].) The parties also recognize that the Unruh Civil Rights Act is designed to address concerns "not only with access to business establishments, but with equal treatment of patrons in all aspects of the business." (*Koire* v. *Metro Car Wash, supra,* 40 Cal.3d at p. 29.) Thus, in the proper situation, the act could be applicable to businesses which discriminate by offering price discounts to certain classes of individuals. (See, e.g., *Ibid.*)

Before we discuss the facts before us, it is necessary to determine the level of scrutiny to be applied. Under the United States Constitution, no state may deny equal protection of the laws to any person. Distinctions based upon race, alienage, national origin, and gender all receive heightened standards of review because classifications based upon these factors "are so seldom relevant to the achievement of any legitimate state interest" (*Cleburne* v. *Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 440 [87 L.Ed.2d 313, 320, 105 S.Ct. 3249]) or "generally provide[s] no sensible ground for differential treatment." (*Ibid.*) On the other hand, the United States Supreme Court has refused to apply a heightened level of examination to age-based discrimination because persons in this classification have not been subjected to a history of discrimination on the basis of stereotyped characteristics. (*Id.* at p. 441 [87 L.Ed.2d at p. 321].)

The California Supreme Court appears to use different tests in determining when a private person or entity can legally discriminate under the

---

[4] California Civil Code section 51 states in part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

Unruh Civil Rights Act. In *In re Cox* (1970) 3 Cal.3d 205, 212 [90 Cal.Rptr. 24, 474 P.2d 992], the court indicated that the Unruh Civil Rights Act's "broad interdiction . . . is not absolute; [business enterprises] may establish *reasonable* regulations that are *rationally related* to the services performed and facilities provided." (Italics added.) Thus, if it is factually determined to be reasonable, restaurants may require men to wear ties (*Hales* v. *Ojai Valley Inn & Country Club* (1977) 73 Cal.App.3d 25, 28-29 [140 Cal.Rptr. 555, 89 A.L.R.3d 1]) and a cemetery may exclude punk rockers from a funeral (*Ross* v. *Forest Lawn Memorial Park* (1984) 153 Cal.App.3d 988 [203 Cal.Rptr. 468, 42 A.L.R.4th 1049]).

Another California Supreme Court case appears to establish a different test. In *Marina Point, Ltd.* v. *Wolfson, supra*, 30 Cal.3d 721, the court determined apartment owners could not exclude all children. In so concluding, the court indicated that an exclusionary policy must serve a *"compelling* societal interest." (*Id.* at p. 743; italics added.) ■ In grappling with this apparent inconsistency in the California Supreme Court's opinions, the Ninth Circuit Court of Appeals in *Martin* v. *International Olympic Committee* (9th Cir. 1984) 740 F.2d 670, 677 concluded: "When a statute or rule arbitrarily discriminates against any *class* of persons, it may be justified only if there is a compelling societal interest. [Citation.] A business establishment may exclude *individuals*, however, if they violate a reasonable deportment rule which is rationally related to the services performed." (Italics added.) This analysis is consistent with the California Supreme Court's discussion in *Koire* v. *Metro Car Wash, supra*, 40 Cal.3d 24. *Koire* examined whether price-based discounts which classified persons by sex was legal by determining if the classification was contingent upon some "arbitrary, class-based generalization." (*Id.* at p. 36.)

■ The classification here is based upon classes of individuals. It does not involve the exclusion of one individual because of a deportment rule arguably related to services performed or facilities provided. Thus, we apply the *Koire* standard to determine if the discounts offered to seniors and children involve an arbitrary class-based generalization. We find they do not.

In the landmark case of *Koire* v. *Metro Car Wash, supra*, 40 Cal.3d 24, the California Supreme Court held that a car wash could not offer discounts to female customers on "Ladies Day" and a bar could not offer free admission to females on "Ladies Night." The court reasoned that discriminatory policies based upon sex were "detrimental to both men and women, because it reinforces harmful stereotypes." (*Id.* at p. 34.) The court noted, however, that some promotional discounts would be permissible under the act. "For example, a business establishment might offer reduced rates to *all* customers

on one day each week. Or, a business might offer a discount to any customer who meets a condition which any patron could satisfy (e.g., presenting a coupon . . .). In addition, nothing prevents a business from offering discounts for purchasing commodities in quantity, or for making advance reservations. The key is that the discounts must be 'applicable alike to persons of every sex, color, race, [etc.]' . . . instead of being contingent on some arbitrary class-based generalization." (*Id.* at p. 36; fn. omitted.)

In finding that sex-based discounts were arbitrary and illegal, the court distinguished between sex-based and age-based discounts. We quote at length the discussion in *Koire* on this issue:

"Charging different prices to children and senior citizens is sometimes permissible and socially desirable. . . ."

"[P]ublic policy in California mandates the *equal* treatment of men and women.

"The public policy considerations applicable to price discounts for children or senior citizens are very different from those applicable to sex-based discounts. Although this court need not determine the validity of any specific age-based discount, . . . several important and distinguishing features should be noted.

"Numerous statutes in California provide for differential treatment of children and adults.

"Similarly, state and federal legislation has been enacted to address the special needs of our elderly citizens . . . .

"Children and elderly persons frequently have limited earning capacities which justify differential treatment in some circumstances. While women generally earn less than men, the societal remedy for this inequity has been equal employment opportunities. There is legislation on the books which seeks to lessen the gap in earnings between men and women. By contrast, the vast majority of children are *incapable* of earning as much as adults and are, in fact, *prohibited* from working except under strict limitations . . . .

"Similarly, many elderly persons have limited incomes. While efforts are being made to increase employment opportunities for senior citizens (see Unemp. Ins. Code, § 16000 et seq.), many are unable to work due to health problems. For others, retirement may even be legislatively encouraged or mandated. . . .

"Thus, price discounts for children or for the elderly are justified by social policy considerations as evidenced by legislative enactments. This is not true as to sex-based discounts. In fact, the Legislature has specifically provided for certain price discounts for senior citizens." (*Koire* v. *Metro Car Wash, supra*, 40 Cal.3d at pp. 36-38, italics in original, citations and fns. omitted; see, *post*, p. 1500.)

Here, defendants suggest the pricing scheme is designed to promote the family-oriented nature of its business and that the promotional scheme benefits disadvantaged groups because seniors and children have less disposable income.

Establishing different price rates for seniors and children in an amusement business does not perpetuate irrational stereotypes. The pricing discounts are aimed directly at encouraging attendance at a family-oriented business. Such classifications recognize that without such incentives these populations may be totally excluded from enjoying some of the pleasures of our society. Paying for the necessities of life frequently strains the pocketbooks of many Americans. Without discount tickets, a family may never be able to afford and enjoy a baseball game, amusement parks, Disneyland, the zoo, museums, campgrounds, state fairs, parks or a movie. Making these American pastimes affordable is beneficial to us all.

In addition, unlike other classifications (e.g., race, sex, and national origin) all persons benefit from these discounts during their lifetimes, first as children and then as senior citizens.

With regard to children, plaintiff's own evidence supports the conclusion that they have less disposable income evidencing another reason why the discounts are not arbitrary. The declaration submitted by plaintiff conceded that "in probably 90% of the cases, [tickets at defendant's theater] were purchased by adults." Any suggestion that most children under the age of 12 have money of their own would be ludicrous. Further, as *Koire* demonstrated, the Legislature has provided for differential treatment of minors in many legislative acts (see, e.g., Welf. & Inst. Code, § 200 et seq. [the Arnold-Kennick Juvenile Court Law]; Civ. Code, § 1556 [limitation on minors' capacity to contract]; Veh. Code, § 12507 [no person under 16 years of age may be licensed to drive]; Food & Agr. Code, § 3021 [free admission to fairs]), a factor we may consider in determining if a classification violates the Unruh Civil Rights Act. (*Koire* v. *Metro Car Wash, supra*, 40 Cal.3d at p. 31.)

We find the same conclusion also obvious as to senior citizens. Once someone retires, income obviously diminishes. Encouraging and enabling

citizens to enjoy life and the benefits of our society as they reach an elderly age is a favored public policy.

To paraphrase Congress, traditional concepts of a democratic society recognize the inherent dignity of the individual. Senior citizens of our nation are entitled to be secure in retirement in health, honor, and dignity. After years of being productive and contributing to the economy and participating in and contributing to meaningful civic, cultural, educational, business and recreational activities, they deserve to enjoy what this nation may offer. (42 U.S.C. § 3001.) Offering discounts to seniors for both the necessities and the pleasures of life recognizes that "senior citizens are *entitled* to retire at some point in their lives." (*Koire* v. *Metro Car Wash, supra*, 40 Cal.3d at p. 38, italics in original.)

Social Security and Medicare are but two examples of congressional enactments designed to assist senior citizens once they retire. Other examples (some of which were delineated in *Koire*) of legislative expressions reflecting society's concern with the well-being of seniors are: 42 U.S.C. § 1381 et seq. [supplemental security income]; 26 U.S.C. § 121 [1-time tax exclusion for sale of principal residence by individuals over 55 years of age]; 42 U.S.C. § 1395 [health insurance for aged and disabled]; Pub. Resources Code, § 5011 [reduced rate passes to state parks]; Ed. Code, § 89330 [waiver of fees at California State University]; Welf. & Inst. Code, § 12000 et seq. [State supplementary program for aged, blind and disabled]; Gov. Code, § 12941 [unlawful employment practice to refuse to employ individuals over age 40]; Rev. & Tax. Code, § 69.5 [homeowner's exemptions for persons 55 years of age and older].)

Plaintiff suggests that the basis for the pricing policy is not sound. He suggests that statistics will show that seniors do not have less disposable income. In support of this suggestion, he points to statements by Professor Avery. However, contrary to his suggestion, none of the statements refute the conclusion that once persons retire, their income diminishes and thus they have less disposable income.

Avery concluded that seniors have less debt than other segments of our society. This simply means that on a whole, seniors do not over spend; this fact does not establish, as plaintiff suggests, that seniors have more to spend. Avery stated that 43 percent of high-income families headed by persons age 65 years and older are millionaires; but this statistic addresses only high-income families (those with income over $50,000) and does not consider the distribution of families across the various levels of wealth. Avery also stated that "except for young households, the distribution of families across the various levels of wealth does not appear to be strongly related to age." This

statement, however, was a conclusion based only upon high-income families; it did not address the disposable income of persons in all economic strata.[5]

Plaintiff's evidence did not create a triable issue of fact refuting defendant's declaration or the legislative public policy assumptions that senior citizens have reduced disposable income. The trial court properly granted defendant's motion for summary adjudication.

All members of society regardless of their sex, race, religion or national origin will, in the normal course of events, be members of each class entitled to the discount. This is neither arbitrary, discriminatory nor unfair.

Families may continue to expect popcorn and discounts for seniors and children at the movies.

The judgment is affirmed.

Boren, J., and Lucas, J.,* concurred.

---

[5] Additionally, plaintiff asks us, as he did the trial court, to take judicial notice of three other articles co-authored by Avery published in the Federal Reserve Bulletin. These three articles were not submitted as expert opinions and attached to Avery's declaration. However, appellant asks that they be considered by us on appeal (Evid. Code, § 459, subd. (a)) as containing facts upon which the court may take judicial notice. We may take notice of federal *acts* (Evid. Code, § 452, subd. (c)) and we may "take judicial notice of public records [but] we do not take judicial notice of the truth of all matters stated therein." (*Love* v. *Wolf* (1964) 226 Cal.App.2d 378, 403 [38 Cal.Rptr. 183].) It is only proper for us to take judicial notice if there is no question of truth. (*Whispering Pines Mobile Home Park, Ltd.* v. *City of Scotts Valley* (1986) 180 Cal.App.3d 152, 160-162 [225 Cal.Rptr. 364] [appraisal treatises not subject to judicial notice as insufficient information existed to ensure the sources were indisputably accurate].) Thus, it would not be proper for us to take judicial notice (Evid. Code, § 459, subd. (a)) of these three articles. Even if these articles had properly been submitted as additional statements of an expert, they do not lead to a contrary result. The economic data was not collected to examine the disposable income of seniors or children, the issue presented here.

Plaintiff also asked the trial court and us to take judicial notice of an article written by Donald Fowles and two magazine articles, one from Business Week and one from Money Magazine. Plaintiff cannot cite any authority supporting this request, and we cannot find any logical reason to assume these informal unauthenticated articles contain facts which would be indisputably accurate. (Evid. Code, § 452, subd. (h).) Thus, they have not been considered by us.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.