[No. H014295. Sixth Dist. June 27, 1996.]

CLAUDE J. WILSON, Plaintiff and Respondent, v.
FAIR EMPLOYMENT AND HOUSING COMMISSION, Defendant;
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, Real Party
in Interest and Respondent;
ASSOCIATED AVIATION UNDERWRITERS, Real Party in Interest and
Appellant.

COUNSEL

Kenney, Burd & Markowitz, Stephen C. Kenney and Philip D. Witte for Real Party in Interest and Appellant.

Reiland & Reiland, Hal P. Reiland and Melinda P. Reiland for Plaintiff and Respondent.

Bradley G. Booth, Suzanne M. Ambrose and Carole F. Grossman for Real Party in Interest and Respondent.

OPINION

COTTLE, P. J.—An insurer issued a liability insurance policy to a company regarding its company plane, excluding coverage for a pilot over 60 years of age. Based upon a complaint by the pilot, the Department of Fair Employment and Housing (DFEH) filed an accusation that the insurer had violated the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) by discriminating against the pilot based on his age. The Fair Employment and Housing Commission (FEHC) determined that it had no jurisdiction to consider the matter. The pilot petitioned the trial court for a writ of administrative mandamus directing the FEHC to set aside its decision and decide the merits of the case, and the trial court granted the petition. We conclude that the writ was not properly granted, and therefore reverse the judgment.

I. FACTUAL BACKGROUND

In 1985, National Vitamin, Inc. (National Vitamin), a company in the business of manufacturing and distributing vitamins, purchased an aircraft to fly its executives and customers throughout the western United States. The

aircraft was a "Beech 90 King Air," an eight-passenger, twin engine, turbo-prop aircraft. National Vitamin retained[1] respondent Claude J. Wilson (Wilson) to pilot the aircraft. Wilson, who was born on November 21, 1920, had first obtained a pilot's license in 1940.

On July 17, 1985, a Fireman's Fund Insurance Companies policy was issued by and through appellant Associated Aviation Underwriters (AAU).[2] The policy provided $5 million in liability coverage in exchange for a $4,675 premium payment by National Vitamin, the named insured under the policy. The 1985 policy contained a provision regarding the persons authorized to fly the airplane as pilot-in-command, but that provision made no reference to the pilot's age.[3] Wilson flew the plane for National Vitamin during the 1985-1986 policy year.

AAU renewed the policy for the year from July 17, 1986, to July 17, 1987, but the policy for that period provided that the airplane would not be covered if Wilson acted as pilot-in-command. On September 9, 1986, the following endorsement, retroactive to July 17, 1986, was added to the policy: "Item 7. Pilots—of the Declarations is amended to exclude the following: Claude J. Wilson." Language eliminating coverage for National Vitamin if Wilson was the pilot-in-command was included in the subsequent AAU policies covering July 17, 1987-1988;[4] July 17, 1988-1989; and July 17, 1989-1990. The parties apparently agree that the policy for 1990-1991 deleted the specific reference to Wilson, and generally excluded all individuals age 60 or older from serving as pilot-in-command of the aircraft.[5]

---

[1]Wilson's petition alleges that National Vitamin "employed" him to maintain and act as pilot in command of the aircraft. The Associated Aviation Underwriters argues that Wilson was an "independent contractor." We need not resolve this dispute.

[2]According to AAU's brief on appeal, AAU is "a voluntary unincorporated association that underwrites aviation risks on behalf of its member companies. The member companies are jointly and severally liable for the risks underwritten by AAU."

[3]The 1985-1986 policy contained the following provision: "7. PILOTS: The policy shall not apply while the aircraft is in flight unless the pilot in command is: See Endorsement No. 1." Endorsement No. 1 set forth the following qualifications for the pilot-in-command: "Any person while holding a currently effective certificate issued by the Federal Aviation Administration designating such person a commercial pilot with airplane category and unlimited multi engine land and instrument ratings and who has a minimum of 3000 total logged flying hours as pilot in command including at least 1000 hours in multi engine aircraft and at least 250 hours in turbo prop aircraft of which not less than 100 hours have been in the model aircraft insured hereunder or has successfully completed the manufacturer's recommended ground and flight school in the model aircraft insured hereunder."

[4]The policy from July 17, 1987-1988, stated: "IT IS AGREED THAT: 1. All Coverages set forth in this Policy shall not be in effect while Claude Wilson is acting as pilot-in-command."

[5]AAU states that the 1990-1991 policy provided as follows: "Based on underwriting analysis of the contemplated use of this multi-passenger turboprop aircraft, the geographical

## II. PROCEDURAL HISTORY

### A. *The Initial DFEH Accusation*

On June 16, 1987, Wilson filed a complaint with the DFEH, alleging that he was denied services (insurance coverage) by AAU due to his age (66), in violation of Civil Code section 51. On or about June 15, 1988, the DFEH filed an accusation alleging that in the 1986-1987 policy, AAU had engaged in arbitrary age discrimination against Wilson in violation of the Unruh Civil Rights Act. AAU filed a "Notice of Defense" which, in part, challenged the FEHC's jurisdiction to consider the accusation.

By agreement of the parties, the matter was submitted to an administrative law judge for a proposed decision on the jurisdictional issue. On June 16, 1989, the administrative law judge issued a proposed decision dismissing the accusation. The decision concludes: "The McBride-Grunsky Regulatory Act is controlling regarding claims of discrimination in insurance underwriting decisions. Complainant's failure to exhaust the administrative remedies provided in that act precludes the [FEHC] from proceeding on complainant's complaint under the Unruh Civil Rights Act." On September 14, 1989, the FEHC unanimously adopted this proposed decision as its final decision.

### B. *Wilson's Complaint to the Department of Insurance*

Wilson also sent letters to the Department of Insurance concerning AAU's policy for the policy year of July 17, 1986-1987. Although the record on appeal may not contain all of this correspondence, it is clear that numerous letters were exchanged between Wilson, AAU, and the Department of Insurance addressing this matter. A March 21, 1990, letter to Wilson from an associate underwriting officer with the Department of Insurance states, in part: "The matter has been re-reviewed, and we have determined that the insurer is neither in violation of the contract nor the California Insurance Code. [¶] However, there may be a violation of the Unruh Civil Rights Act. We suggest that you contact the California Attorney General's office if you wish to pursue the matter further." Later, the parties exchanged additional correspondence regarding proposed terms for the 1990-1991 policy.

### C. *The Second DFEH Accusation*

On May 8, 1990, Wilson apparently made a second complaint with the DFEH. On or about May 8, 1991, the DFEH filed a second accusation

---

areas over which the aircraft will be flown, the frequency and type of flying contemplated, and other factors, this policy excludes operation of the aircraft by any pilot who would not be qualified to operate a Part 121 aircraft as pilot-in-command under the Federal Aviation Regulation 121.383(c)."

against AAU, alleging that Wilson had exhausted administrative remedies with the Department of Insurance, and that AAU's policies for 1986 and subsequent years constituted an arbitrary withdrawal of services to a class of individuals age 65 or older in violation of the Unruh Civil Rights Act.

After evidentiary hearings on this second accusation, the administrative law judge filed a proposed decision finding that AAU had violated the Unruh Civil Rights Act. On December 8, 1994, in a three-to-one decision, the FEHC decided not to adopt the proposed decision. The FEHC dismissed the second accusation on the ground that it lacked jurisdiction to consider the case.

### D.   Wilson's Petition for Writ of Administrative Mandamus

On March 15, 1995, Wilson filed a petition for a writ of administrative mandamus with the superior court. The petition requested that the court issue a writ to "to stay and vacate the [FEHC decision of December 8, 1994], determine that the [FEHC] has jurisdiction to hear the matter on its merits and remand this matter to the [FEHC] for a final decision on the merits and that WILSON be awarded attorney fees and costs of this writ." Wilson's petition was opposed by AAU and the FEHC. On June 9, 1995, the trial court issued an order granting the petition and remanding the second accusation to the FEHC to decide the case on the merits. Judgment was entered on August 1, 1995, and AAU appeals. The record on appeal has been augmented to include a later judgment nunc pro tunc filed on October 17, 1995.

## III.   DISCUSSION

### A.   Issue and Standard of Review

On appeal, AAU contends that the trial court's decision remanding the case to the FEHC was incorrect because the Department of Insurance has primary jurisdiction to consider complaints regarding underwriting practices, and only the Department of Insurance has the expertise to evaluate such claims. AAU also contends that insurance underwriting decisions using age as a factor in setting premiums or evaluating risks are not subject to age discrimination claims under the Unruh Civil Rights Act. Wilson and the DFEH argue that the trial court's decision was correct. They contend that the FEHC must resolve Wilson's claim because (1) insurers are subject to the Unruh Civil Rights Act, including age discrimination claims, and (2) the FEHC is required to determine the issues raised by an accusation of an Unruh Civil Rights Act violation.

■ The primary issue is thus whether the FEHC has jurisdiction to determine whether an insurer's underwriting decision violates the Unruh Civil Rights Act. This question of jurisdiction, which involves statutory interpretation, is a purely legal issue. The trial court's judgment is therefore subject to this court's independent review. (See *Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305 [202 Cal.Rptr. 44].)

### B. *Jurisdiction*

The arguments of the parties regarding jurisdiction over Wilson's claim depend upon interpretation of various statutes, including provisions of the Insurance Code, the changes made by Proposition 103, the Unruh Civil Rights Act, and the Government Code.

### 1. *Statutory Provisions*

AAU and its associated insurers are subject to the comprehensive requirements of the Insurance Code, including the McBride-Grunsky Regulatory Act (McBride Act) (Ins. Code, § 1850.4 et seq.), which sets standards applicable to casualty ratemaking. This act, as modified by the voters through the initiative process and by the Legislature through various amendments, is set forth in sections 1851 through 1861.16 of the Insurance Code.

Section 1858 of the Insurance Code establishes an administrative scheme for complaints to be filed with the Insurance Commissioner. "Any person aggrieved by any rate charged, rating plan, rating system, or underwriting rule followed or adopted by an insurer . . . may file a written complaint with the commissioner requesting that the commissioner review the manner in which the rate, plan, system, or rule has been applied with respect to the insurance afforded to that person. In addition, the aggrieved person may file a written request for a public hearing before the commissioner, specifying the grounds relied upon." (Ins. Code, § 1858, subd. (a).) The Insurance Commissioner is authorized to hold a public hearing (Ins. Code, § 1858.2), issue an order specifying a violation and requiring compliance within a reasonable time thereafter (Ins. Code, § 1858.3, subd. (b)), assess monetary penalties (Ins. Code, § 1858.3, subd. (c)), and suspend or revoke the certificate of authority of any insurer who violates the provisions of the act or who fails to comply with the commissioner's orders. (Ins. Code, § 1858.4; *Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 384-385 [6 Cal.Rptr.2d 487, 826 P.2d 730].) Finally, Insurance Code section 1858.6 provides for judicial review following "[a]ny finding, determination, rule, ruling or order made by the commissioner under this chapter . . . in accordance with the provisions of the Code of Civil Procedure."

The McBride Act specifically immunizes certain conduct subsumed by its provisions from prosecution under other laws. Insurance Code section 1860.1 provides: "No act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance." Section 1860.2 provides in part: "The administration and enforcement of this chapter shall be governed solely by the provisions of this chapter."

Various substantive sections of the McBride Act were significantly altered by the voters in November 1988 with the passage of Proposition 103. The change most relevant here was the addition of the following language: "The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, the Unruh Civil Rights Act (Sections 51 to 53, inclusive, of the Civil Code) . . . ." (Ins. Code, § 1861.03, subd. (a).)

The Unruh Civil Rights Act states in part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51.)[6]

A violation of the Unruh Civil Rights Act is also an unlawful practice under the Fair Employment and Housing Act. (Gov. Code, § 12948 ["It shall be an unlawful practice under this part for a person to deny or to aid, incite, or conspire in the denial of the rights created by Section 51 or 51.7 of the Civil Code"].) Section 12930 of the Government Code authorizes the DFEH to "receive, investigate, and conciliate complaints alleging a violation of Section 51 or 51.7 of the Civil Code." (Gov. Code, § 12930, subd. (f)(2).) The DFEH is also authorized to issue accusations and to prosecute such accusations before the FEHC. (Gov. Code, §§ 12930, subd. (h), 12965.) Section 12967 of the Government Code provides that the FEHC "shall hold hearings on accusations issued pursuant to Section 12965 and determine the issues raised therein."

### 2. *Determination of FEHC's Jurisdiction in This Case*

Wilson argues that the Unruh Civil Rights Act and the Government Code sections set forth above show "that AAU's discriminatory practices

---

[6]The Unruh Civil Rights Act does not explicitly list age as a protected classification, but in cases not involving insurance, age has been considered one of the bases of discrimination covered by the Unruh Civil Rights Act. (See *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].)

must be reviewed by FEHC. If not FEHC will be in violation of the legislative mandate directing them to take jurisdiction of Unruh Civil Rights Act violations." After reviewing the Insurance Code provisions, the effect of Proposition 103, the Unruh Civil Rights Act and the relevant administrative expertise, we conclude that the FEHC does not have jurisdiction to decide Wilson's claim.

First, AAU's decision to incorporate certain conditions regarding the pilot-in-command into National Vitamin's aviation insurance policy was clearly an underwriting decision made on the basis of risk evaluation. Wilson contends that "this case is only about age discrimination and not about insurability criteria . . . ." We cannot accept this characterization. AAU's decision regarding the National Vitamin policy at issue is inherently intertwined with both (1) its evaluation of the risks presented by the National Vitamin policy, and (2) the general insurance underwriting policies of AAU. Wilson argues that "AAU had no other basis for excluding Wilson from coverage except for his age." Even if Wilson is correct that his other qualifications (such as training, flight time and medical condition) met the policy provisions and only his age excluded him from National Vitamin's coverage, a factual issue not presented by this appeal, Wilson's claim is still a challenge to an underwriting decision or practice of AAU. The use of underwriting rules and rating criteria will sometimes result in exclusions from coverage.

Because Wilson's claim involves allegedly discriminatory underwriting practices, it falls within the ambit of the McBride Act. As set forth above, the McBride Act specifically regulates the ratemaking policies of insurance companies, and provides a comprehensive administrative scheme giving the Insurance Commissioner authority to decide issues presented by persons allegedly aggrieved by any "underwriting rule." (Ins. Code, § 1858, subd. (a).)

Second, Proposition 103, which added the provision that the business of insurance is subject to the Unruh Civil Rights Act, contains no provision stating that alleged Unruh Civil Rights Act violations by insurers are within the jurisdiction of the FEHC. Instead, the language regarding the Unruh Civil Rights Act was placed in chapter 9 of the Insurance Code, which contains the McBride Act's procedure for hearing and determination by the Insurance Commissioner. In addition to its comprehensive scheme for the Insurance Commissioner to decide the claims of persons allegedly aggrieved by an "underwriting rule," the McBride Act also provides: "The administration and enforcement of this chapter shall be governed solely by the provisions of this chapter." (Ins. Code, § 1860.2.) We believe that Wilson's claim

here is pursuant to subdivision (a) of section 1861.03 of the Insurance Code (subjecting the insurance business to the Unruh Civil Rights Act) and clearly within the scope of this provision. His administrative claim is therefore "governed solely by the provisions" of chapter 9 of the Insurance Code, including the McBride Act's procedure for hearing and determination by the Insurance Commissioner. In light of this clear statutory language, we do not believe that Wilson's administrative claim is properly submitted to another agency, such as the FEHC.

In another context, regarding the approval of insurance rates, Proposition 103 added the following language: "No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter. In considering whether a rate is excessive, inadequate or *unfairly discriminatory*, no consideration shall be given to the degree of competition and *the commissioner shall consider* whether the rate mathematically reflects the insurance company's investment income." (Ins. Code, § 1861.05, subd. (a), italics added.) Although this provision does not specifically refer to the Unruh Civil Rights Act, it is significant that the McBride Act's hearing procedures (Ins. Code, § 1858 et seq.) continue after Proposition 103, and that Proposition 103 acknowledged the authority of the Insurance Commissioner in questions regarding discriminatory rates.

Third, the Unruh Civil Rights Act, by its own terms, is designed not to encroach upon the Insurance Code or other existing law. Civil Code section 51 provides in part: "This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law . . . ." Wilson's right, if any, to be covered under National Vitamin's policy is clearly subject to the comprehensive provisions of the Insurance Code regarding underwriting practices, including the provision that administrative claims by persons allegedly aggrieved by an underwriting rule are to be submitted to the Insurance Commissioner.

Fourth, insurance underwriting issues require the specialized factfinding and expertise of the Insurance Commissioner rather than that of the FEHC. The statutes establishing the FEHC and the record here provide no indication that the FEHC has any expertise or experience with actuarial risks. Actuarial risk evaluation is critical in determining both premium rates for a policy and whether a policy should be issued. In its December 8, 1994, decision, the FEHC states that it is "an unsuitable forum in which to determine the appropriate use of age criteria in the insurance industry." (Capitalization omitted.) The FEHC concludes: "[T]he appropriate use of age criteria in the insurance industry is an area in which this Commission does not have any

particular expertise or experience. We have not been previously called upon to evaluate the actuarial practices of insurance companies. This is in stark contrast to the Commission's longstanding expertise and experience with discrimination in employment, housing, and public accommodation cases."

On the other hand, the Insurance Commissioner clearly possesses the expertise to evaluate and resolve issues regarding actuarial risks and allegedly discriminatory underwriting practices. For example, in *County of Los Angeles* v. *Farmers Ins. Exchange* (1982) 132 Cal.App.3d 77 [182 Cal.Rptr. 879], plaintiffs sought to enjoin certain insurance practices, such as basing automobile insurance rates on geographic areas, and "redlining" certain geographic areas and making automobile liability policies unavailable in those areas. The court noted that ". . . the Insurance Commissioner and the Department of Insurance possess sophisticated bodies of expertise in this field which make them particularly able to handle these matters." (*Id.* at p. 87.)

The administrative expertise of the Department of Insurance was also recognized in *Farmers Ins. Exchange* v. *Superior Court, supra,* 2 Cal.4th 377. In that case, plaintiffs alleged that an insurer's alleged refusal to offer "good driver" discounts to all eligible applicants violated section 17200 of the Business and Professions Code. Applying the primary jurisdiction doctrine, the Supreme Court ordered the trial court to stay the civil action pending proceedings before the Insurance Commissioner. (2 Cal.4th at p. 401.) The court noted that the Insurance Code provided a " 'pervasive and self-contained system of administrative procedure' " (*id.* at p. 396) to deal with the precise questions raised, and that ". . . the question of insurance rate regulation has 'traditionally commanded administrative expertise applied to controlled industries.' " (*Id.* at p. 399.) The court stated: "[T]he determination whether petitioners employed rates that are 'unfairly discriminatory' also calls for exercise of administrative expertise preliminary to judicial review. In practice, resolution of the 'unfairly discriminatory rate' question will turn in many instances on determination of the above discussed rate-setting provisions of the Insurance Code. It is readily apparent that a court would benefit immensely, and uniformity of decisions would be greatly enhanced, by having an expert administrative analysis available before attempting to grapple with such a potentially broad-ranging and technical question of insurance law." (*Id.* at pp. 399-400.) Similarly, the question in this case involves the Insurance Code's provisions regarding underwriting practices, and the Insurance Commissioner has the relevant administrative expertise.

In light of the factors set forth above, we conclude that the trial court erred in granting the writ and remanding this case to the FEHC for decision on the merits.

The sole question before us is the correctness of the trial court's decision remanding the case to the FEHC. Wilson's petition requested a writ remanding the case to the FEHC for a decision on the merits. In light of the narrow issue presented by the petition and the trial court's decision, we determine only that the FEHC lacked jurisdiction to determine the merits of Wilson's claim. Given Wilson's decision to bring this matter before an administrative agency,[7] we conclude that the proper administrative procedure is to file a written complaint with the Insurance Commissioner pursuant to section 1858 of the Insurance Code.

The parties apparently dispute whether the Department of Insurance has decided Wilson's Unruh Civil Rights Act claim. Wilson argues that the Department of Insurance has taken the position that it has no jurisdiction over Unruh Civil Rights Act violations, and "[i]f it is found that the FEHC does not have jurisdiction to decide AAU's discrimination against Wilson, the Department of Insurance surely will not hear the matter. Wilson will simply be left with no remedy." AAU responds that the Department of Insurance "has never stated that it lacks jurisdiction to hear matters involving violations of the Unruh Civil Rights Act. The Department of Insurance merely informed Wilson that it had not found AAU to be in violation of the contract or of the California Insurance Code."

We shall not resolve this dispute. The record before us does not contain all of the documents regarding Wilson's actions before the Insurance Commissioner. Wilson's writ petition did not request any action regarding proceedings before the Insurance Commissioner, and the trial court did not make any determination regarding such proceedings. On the basis of the petition, the order, and the record before us, we do not determine whether Wilson filed a written complaint pursuant to section 1858 of the Insurance Code, or whether the Insurance Commissioner made a "finding, determination, rule, ruling or order," subject to judicial review under Insurance Code section 1858.6, on Wilson's Unruh Civil Rights Act claim.

## C. *Age Discrimination*

The parties dispute whether age-based insurance underwriting decisions are subject to age discrimination claims under the Unruh Civil Rights Act. Given the narrow jurisdictional question before us, however, we decline to issue any advisory opinion regarding whether insurance underwriting decisions are subject to age discrimination claims under the Unruh Civil Rights Act, or any opinion as to the merits of Wilson's claim.

---

[7]Wilson did not file a complaint in superior court seeking damages or other relief for an Unruh Civil Rights Act violation. We therefore do not address the possibility of such a complaint filed directly with the court without prior administrative action. (Cf. *Farmers Ins. Exchange* v. *Superior Court, supra,* 2 Cal.4th 377.)

## D. *Res Judicata and Collateral Estoppel*

AAU contends that the second accusation is barred by res judicata and collateral estoppel because the issue presented, the FEHC's jurisdiction over this claim, was decided in the FEHC decision on the first accusation. In light of our conclusion that the FEHC does not have jurisdiction over this claim and our reversal of the judgment, we need not address these contentions.

## DISPOSITION

The judgment is reversed. Each party shall bear its own costs on appeal.

Mihara, J., concurred.

**BAMATTRE-MANOUKIAN, J.,** Dissenting.—I agree with my colleagues that, so far as relevant to Associated Aviation Underwriters' assertion that its age-based discrimination was consistent with sound insurance underwriting practice, the Insurance Commissioner may be deemed to have far more expertise than the Fair Employment and Housing Commission (FEHC). I also acknowledge the possibility that FEHC involvement in claims such as Claude J. Wilson's would introduce an undesirable element of uncertainty into insurance underwriting. For both reasons, I believe it might well be preferable to permit, or even to require, the FEHC to defer to the Insurance Commissioner on this narrow issue. But I find no provision in the law for such deferral. The only issue before us is whether the FEHC had *jurisdiction* to address Wilson's claim, and this issue must be resolved not on the basis of my perception of what might be a desirable result but rather by construction and application of relevant statutes. On the basis of my understanding of the statutes I cannot agree that the FEHC lacked jurisdiction. I therefore respectfully dissent from my colleagues' conclusion that the superior court's judgment must be reversed.

As a general rule an administrative agency's jurisdiction is controlled by the underlying constitutional or statutory provisions. (Cf. *Larson* v. *State Personnel Bd.* (1994) 28 Cal.App.4th 265, 273-274 [33 Cal.Rptr.2d 412].) The FEHC's jurisdiction of Unruh Civil Rights Act claims is controlled by statute, and in the abstract the statutory analysis is straightforward:

The Government Code declares an Unruh Civil Rights Act violation to be an "unlawful practice." (Gov. Code, § 12948.) The Department of Fair Employment and Housing is authorized "[t]o receive, investigate, and conciliate" complaints of such unlawful practices. (*Id.* § 12930, subd. (f)(1).) If the Department of Fair Employment and Housing (DFEH) cannot eliminate

the unlawful practice by less adversarial means, it is authorized by Government Code section 12965 to issue a written accusation which charges the accused respondent with the unlawful practice. By explicit statutory provision the FEHC "shall hold hearings on accusations issued pursuant to Section 12965 and shall determine the issues raised therein." (*Id.* § 12967.) Thus, in the abstract, once a claimant has filed an Unruh Civil Rights Act complaint with the DFEH and the DFEH has issued an accusation against the respondent, the FEHC has a statutory duty—and thus, necessarily, jurisdiction—to hear the accusation and to determine whether the respondent has in fact unlawfully discriminated against the claimant.

As I view it, the narrow question in this case is whether the circumstances that the respondent is a *provider of aviation insurance*, and that it allegedly discriminated on the basis of the claimant's *age*, should alter the abstract analysis.

In simplified overview the short answer would appear to be that these facts should *not* alter the analysis, because Proposition 103 seems to make clear that the business of insurance is subject to, and several California cases have stated or assumed that arbitrary age-based discrimination is proscribed by, the Unruh Civil Rights Act.

Associated Aviation Underwriters (AAU) does not and cannot deny that it discriminated on the basis of Wilson's age. It relies primarily on the principle that only an *unjustifiable* and therefore *arbitrary* age-based discrimination will violate the Unruh Civil Rights Act (cf., e.g., *Starkman* v. *Mann Theatres Corp.* (1991) 227 Cal.App.3d 1491, 1496 [278 Cal.Rptr. 543]; *Sargoy* v. *Resolution Trust Corp.* (1992) 8 Cal.App.4th 1039, 1043 [10 Cal.Rptr.2d 889]), and on its premise that discrimination on the basis of age is an essential and legitimate element of aviation insurance underwriting and therefore justifiable in that context. "Underwriting" is a label commonly applied to the process, fundamental to the concept of insurance, of deciding which risks to insure and which to reject in order to spread losses over risks in an economically feasible way. (Cf. *Group Life & Health Ins. Co.* v. *Royal Drug Co.* (1979) 440 U.S. 205, 211-213 [59 L.Ed.2d 261, 268-270, 99 S.Ct. 1067]; cf. also 1 Couch, Insurance (3d ed. 1995) § 1.9, p. 1-16; for examples of the breadth sometimes given the label, see Ins. Code, §§ 769.81, subd. (d) and 791.02, subd. (a).)

The limited record before us gives me no comprehensive insight into AAU's underwriting practices, or those of the insurance industry generally, with respect to aviation insurance, and no basis on which to evaluate the

reasonableness of those practices. Intuitively, nevertheless, it seems clear to me that in particular circumstances a pilot's age could have a rational bearing on an aviation insurer's objective assessment of a risk it is asked to insure.

But the plausibility of AAU's premise does not, in and of itself, support a conclusion that the FEHC lacks jurisdiction to determine whether, in this case, AAU in fact followed sound and reasonable underwriting practices. AAU's argument that Wilson's age was legitimately relevant to AAU's definition of the risks AAU would insure for National Vitamin begs the only question before us, which is whether the FEHC was empowered to consider this argument on its merits.

In my view we could conclude that the FEHC lacked jurisdiction to reach the merits only if it were to appear, as a matter of law, that AAU's age-based discrimination *could not in any circumstances* have violated the Unruh Civil Rights Act. I cannot justify such a conclusion.

I do not find in the record, or in the parties' arguments, any persuasive reason to declare an unqualified exemption from the Unruh Civil Rights Act for age-based discrimination in any process an insurer may choose to label as underwriting. The label itself provides no assurance that in a particular case the insurer in fact followed sound and reasonable underwriting practices when it discriminated on the basis of age. Nor, for want of any comprehensive exposition in the record as to what AAU's underwriting policy or practice was or how it could be justified, can I conclude that this is a case in which "the policy or practice of a business establishment is valid on its face because it bears a reasonable relation to commercial objectives appropriate to an enterprise serving the public." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165 [278 Cal.Rptr. 614, 805 P.2d 873].)

Accordingly AAU is obliged to rely on its assertion that *as a matter of statutory construction* the Unruh Civil Rights Act does not apply to age-based discrimination in aviation insurance underwriting. If valid, such an assertion would support a conclusion, as a matter of law, that AAU's age-based discrimination could not have violated the Unruh Civil Rights Act, and therefore that there could be no colorable accusation of an Unruh Civil Rights Act violation to which FEHC jurisdiction could attach. I therefore respectfully disagree with my colleagues' conclusion that the assertion need not be reached. But, having reached it, I would conclude that the assertion is not valid.

The FEHC itself provided the foundation for AAU's assertion by expressing doubt that by Proposition 103 the electorate "meant to subject age-based

decisions in the insurance industry to Unruh Civil Rights Act scrutiny." In this court AAU has built upon the FEHC's doubt.

AAU points out that age is not among the categories of discrimination—such as race, color, or national origin—explicitly enumerated in the Unruh Civil Rights Act, although it is now generally acknowledged that an age category has been functionally appended to the Unruh Civil Rights Act by judicial decision. (Cf. *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 726 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; *O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790, 792 [191 Cal.Rptr. 320, 662 P.2d 427]; *Park Redlands Covenant Control Committee* v. *Simon* (1986) 181 Cal.App.3d 87, 93-94 [226 Cal.Rptr. 199]; *Starkman* v. *Mann Theatres Corp.*, *supra*, 227 Cal.App.3d at p. 1496; *Sargoy* v. *Resolution Trust Corp.*, *supra*, 8 Cal.App.4th at p. 1043; see *Koire* v. *Metro Car Wash* (1985) 40 Cal.3d 24, 37, 38 [219 Cal.Rptr. 133, 707 P.2d 195]; cf. also *Sunrise Country Club Assn.* v. *Proud* (1987) 190 Cal.App.3d 377, 381, 382 [235 Cal.Rptr. 404]; *Warfield* v. *Peninsula Golf & Country Club* (1995) 10 Cal.4th 594, 607-609, 623, fn. 11 [42 Cal.Rptr.2d 50, 896 P.2d 776].) Noting that age discrimination was not explicitly mentioned in Proposition 103 or its ballot arguments, the FEHC thought it "quite possible" that the drafters of the proposition were unaware of the judicially constructed age category. On this basis AAU argues that the drafters, and implicitly the electorate, "never intended [Proposition 103] to prohibit insurers from using age as a factor in . . . evaluating risks."

AAU's argument founders on the rule that, in the construction of an initiative measure, the electorate "is presumed to be aware of existing laws and judicial construction thereof." (*In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11 [210 Cal.Rptr. 631, 694 P.2d 744]; cf. also *In re Harris* (1989) 49 Cal.3d 131, 136 [260 Cal.Rptr. 288, 775 P.2d 1057]; *Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 23 [26 Cal.Rptr.2d 834, 865 P.2d 633].) Although presumptions of this kind are not conclusive (cf. *Harris* v. *Capital Growth Investors XIV*, *supra*, 52 Cal.3d at p. 1156), I believe in this instance that the electorate should be deemed to have been aware that the Unruh Civil Rights Act had been judicially construed to extend to age discrimination, and to have intended that the Unruh Civil Rights Act be applied to the insurance industry as so construed.

I would not attach dispositive significance to the Legislature's apparent decisions to omit age from enumerations of categories of proscribed discrimination with respect to life and disability (Ins. Code, § 10140) and certain casualty (*id.* § 679.71) insurance, or to permit consideration of age (*id.*

§ 11624, subd. (a)(4)) or to establish special age-related education programs (*id.* § 11628.3) for certain purposes related to automobile insurance. I note that the Insurance Code also incorporates a number of explicit proscriptions on age discrimination in other specified circumstances. (Cf., e.g., *id.* §§ 406.2, 663.5, 785 et seq., 10194.7, subd. (a)(1), 10194.8, 10233.2, 10291.5, subd. (b)(9).) None of these Insurance Code provisions or omissions appears to me to rebut the electorate's patent determination that the Unruh Civil Rights Act, inferably as judicially construed, also should apply to the insurance industry.

My colleagues refer to the Unruh Civil Rights Act's provision that Civil Code section 51 "shall not be construed to confer any right or privilege on a person which is conditioned or limited by law . . . ." It may be that, when the merits of Wilson's claim are reached, it will appear that AAU's age-based discrimination in this case was in fact a rational application of sound underwriting principles and therefore permissible, and that in this sense Wilson's asserted right to be wholly free of any age discrimination whatsoever should be deemed "conditioned or limited by law." But the merits of Wilson's claim are not before us. Neither AAU nor my colleagues cite, nor do I find, any provision of law which in the abstract would condition or limit Wilson's right to be treated fairly by AAU.

On the basis of a conclusion that AAU's refusal to provide coverage if Wilson were the pilot in command was "clearly an underwriting decision made on the basis of risk evaluation," my colleagues suggest that Wilson's claim was within the jurisdiction of the Insurance Commissioner, under the McBride-Grunsky Regulatory Act of 1947 as amended (Ins. Code, §§ 1850.4-1860.3, hereafter McBride-Grunsky Act), to "review the manner in which . . . [an underwriting] rule has been applied with respect to the insurance afforded to" the complainant. (Ins. Code, § 1858, subd. (a).) My colleagues' point, as I understand it, is that the Insurance Commissioner should be deemed to have *exclusive* jurisdiction of Wilson's claim.

I cannot agree. Even were I to assume that AAU's refusal was a legitimate "underwriting decision," and also that it reflected application of the kind of "underwriting rule" (Ins. Code, § 1858, subd. (a)) to which the McBride-Grunsky Act (a legislative scheme addressed to casualty insurance rates and ratemaking) would apply, the fact the Insurance Commissioner might have jurisdiction for purposes of the McBride-Grunsky Act would not preempt the jurisdiction of the FEHC for purposes of the Unruh Civil Rights Act. The two statutes, as I read them, serve purposes which are not mutually exclusive: While the McBride-Grunsky Act empowers the Insurance Commissioner to regulate rates and ratemaking for the ultimate benefit of consumers

of insurance services, the Unruh Civil Rights Act seeks to serve a broader societal interest in freedom from invidious discrimination in various business contexts (including the insurance industry). The Unruh Civil Rights Act is supplemented by both regulatory and remedial provisions; the McBride-Grunsky Act provides only regulatory jurisdiction and gives the Insurance Commissioner no power to redress perceived injury to an individual complainant whether by monetary damages or otherwise. To conclude that the Insurance Commissioner's jurisdiction of any allegedly discriminatory insurance underwriting practice should be exclusive of the FEHC's Unruh Civil Rights Act jurisdiction would be to preclude individual administrative remedies the Legislature patently intended to make available to Unruh Civil Rights Act claimants. A more satisfactory reading of the two statutes, I submit, would be that the Insurance Commissioner and the FEHC may have *concurrent* jurisdiction over a complaint such as Wilson's.

To support its own argument that the McBride-Grunsky Act "completely preempts the field" of age-based discrimination in casualty insurance underwriting, AAU quotes the act's provisions that "[n]o act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance" (Ins. Code, § 1860.1), and that "[t]he administration and enforcement of this chapter shall be governed solely by the provisions of this chapter. . . ." (*Id.*, § 1860.2). In my view these provisions neither reach the sort of arbitrary misuse of age criteria the Unruh Civil Rights Act proscribes—and which the McBride-Grunsky Act surely does not authorize—nor preclude a conclusion that administrative jurisdiction to enforce the *Unruh Civil Rights Act* remains in the FEHC. *Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 973-974 [201 Cal.Rptr. 379], on which AAU relies, predated Proposition 103; the passage AAU quotes dealt not with the kind of underwriting decision AAU assertedly made but rather with ratemaking.

To support their conclusion that a claim such as Wilson's would be within the exclusive jurisdiction of the Insurance Commissioner, my colleagues observe that Proposition 103 does not explicitly state that alleged Unruh Civil Rights Act violations by insurers are within the jurisdiction of the FEHC. I would not consider the omission significant. The substance of the current statutory scheme of administrative jurisdiction of Unruh Civil Rights Act claims (with concomitant remedial powers) was compiled in the Government Code, from earlier enactments in other codes, in 1980 (Stats. 1980, ch. 992), eight years before the electorate enacted Proposition 103, and the electorate may be presumed to have been aware of the Government Code

provisions. (Cf. *In re Lance W.*, *supra*, 37 Cal.3d at p. 890, fn. 11; cf. also *In re Harris*, *supra*, 49 Cal.3d at p. 136.) Neither the placement of the electorate's reference to the Unruh Civil Rights Act in the Insurance Code, nor the fact that Proposition 103 did explicitly provide procedures for addressing allegations (unrelated to the Unruh Civil Rights Act) of excessive, inadequate, or unfairly discriminatory *rates*, appears to me to support an inference that the electorate intended in insurance cases to shift administrative jurisdiction of Unruh Civil Rights Act complaints from the FEHC to the narrower regulatory authority of the Insurance Commissioner. A better inference, it seems to me, would be that the electorate intended an Unruh Civil Rights Act claimant such as Wilson to have access to the same administrative remedies made available through the FEHC to other Unruh Civil Rights Act claimants and, accordingly, that the electorate intended that not only the Unruh Civil Rights Act itself but also its existing enforcement mechanisms be applicable to the insurance industry.

My colleagues suggest—and I agree—that the Insurance Commissioner has, and that the FEHC may not have, the expertise necessary to evaluate Wilson's allegations of discriminatory insurance practices. I am willing to accept the FEHC's acknowledgment that "the appropriate use of age criteria in the insurance industry is an area in which this Commission does not have any particular expertise or experience," as well as its assumption that the Insurance Commissioner "may have some expertise in the appropriate use of age-based generalizations in the insurance industry."

But I respectfully submit that the question of relative expertise is, again, irrelevant to the question whether, under the pertinent statutes, the FEHC has *jurisdiction* to hear and decide Wilson's claim.

The FEHC took the position that it could not "extend jurisdiction" over the DFEH accusation based on Wilson's complaint absent "clear precedent or precise statutory language clarifying the issue of when the Unruh Civil Rights Act prohibits insurance companies from using age as a condition of insurability." The superior court responded, in essence, that the FEHC was empowered to consider Wilson's case, and to find an Unruh Civil Rights Act violation if (but only if) the FEHC concluded that the AAU's age-based discrimination could not be justified by public policy and legitimate business reasons.

I believe that the superior court's advice, although broad and general in terms, was valid. That the FEHC might understandably regard the nuances of insurance underwriting as difficult would not serve to distinguish the FEHC from this or any other court, or any other agency, that from time to time

finds itself constrained, in the exercise of its clear jurisdiction, to decide a hard case: Once its jurisdiction is established, ordinarily the tribunal must simply do the best it can. Had Wilson chosen to lodge his complaint with a court (under Civ. Code, § 52) rather than with the DFEH, the court might properly have deferred its consideration of the underwriting issues to the Insurance Commissioner under the so-called "primary jurisdiction doctrine." (*Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 386-401 [6 Cal.Rptr.2d 487, 826 P.2d 730].) But a court that invokes the primary jurisdiction doctrine does not thereby deny its own jurisdiction: It simply abates the exercise of its jurisdiction, temporarily, to obtain the benefit of administrative expertise. And in any event there appears, regrettably, to be neither precedent nor a workable mechanism for similar deference between administrative agencies.

In its decision the FEHC suggested that "[t]he insurance industry routinely uses age-based classifications in determining whether to insure various risks, and how much to charge for insurance," and expressed the concern that "[a]sserting jurisdiction over this case could suggest that these longstanding practices are universally unacceptable." I find no rational basis for the FEHC's concern. On the merits of an Unruh Civil Rights Act claim of age-based discrimination, the FEHC's proper function is to search for *unreasonable* and thus *unjustifiable* discrimination. Although assertion of Unruh Civil Rights Act jurisdiction probably would, and certainly should, chill *improper* underwriting practices, an insurer whose age-based discriminations are soundly based in legitimate underwriting rules and policies should have no cause for alarm.

At the same time I recognize that exercise of jurisdiction by the FEHC in cases such as this might tend to jeopardize a desirable uniformity in the application of regulatory laws to insurance underwriting rules and practices. But the solution to such problems must necessarily come from the Legislature or, perhaps, from the electorate. The limitations of this court's judicial role do not permit it to rewrite a legislative scheme simply because some other scheme would appear to be more sensible. Under the law as I understand it, the FEHC has jurisdiction of Wilson's claim. Accordingly I would affirm the judgment of the superior court.

The petition of respondent Claude J. Wilson for review by the Supreme Court was denied October 2, 1996. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.